# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| TIMOTHY ALLEN ATCHISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-cv-922 |
| | ) | |
| v. | ) | |
| | ) | Judge Trauger |
| HUBBELL INDUSTRIAL | ) | |
| CONTROLS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

---

Author block

Howell O'Rear (BPR #26509)
Seth M. McInteer (BPR #26471)
McInteer & O'Rear PLC
2209 Crestmoor Rd., Ste. 310
Nashville, TN 37215
howell@mcolawfirm.com
seth@mcolawfirm.com
Ph. 615-724-6207
Fax 615-523-1311

William E. Bradley (*pro hac vice*)
Kyle G. Hepner (*pro hac vice*)
Robinson & Cole LLP
1201 Pennsylvania Avenue, NW, Ste. 820
Washington, DC 20004
wbradley@rc.com
khepner@rc.com
Ph. 771-213-5602

*Counsel for Hubbell Industrial Controls, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 2

    I.     LEGAL STANDARDS ................................................................. 2

         A.    Motion to Dismiss ........................................................... 2

         B.    Federal Rule of Civil Procedure 9 ................................... 3

    II.    FACTUAL BACKGROUND ......................................................... 4

         A.    Plaintiff's Thirty-Year Career in an IP-Intensive Industry Before Joining Powerohm ..................................................................... 4

         B.    Plaintiff's Employment with Powerohm ........................ 4

         C.    Hubbell's Acquisition of Powerohm ............................... 5

         D.    Hubbell Statements about the Collaboration .................. 6

         E.    Powerohm's Sale of BM "BG" Series Braking Modules .......................... 6

         F.    Plaintiff's Sworn Statements about the Collaboration and Related IP ....... 7

         G.    Plaintiff's Belated Provisional Patent Applications .................................. 7

    III.   THE STATE-LAW CAUSES OF ACTION DO NOT ASSERT ANY FACIALLY PLAUSIBLE CLAIMS ............................................. 7

         A.    The Applicable Statutes of Limitations Bars All State-Law Claims .......... 7

         B.    Plaintiff Fails to Plead Elements of His Partnership and Joint Venture Claims ............................................................................. 11

         C.    Hubbell Received No Benefit to Support an Unjust Enrichment Claim .. 14

         D.    Plaintiff Fails to State a Claim for Fraud Because He Does Not Allege False Representations or Reliance ............................................. 15

             i.    Regarding the Formation of the Collaboration, Plaintiff Fails to Plead Falsity Because He Acknowledges the Truth of the Statements ................................................... 16

             ii.   Regarding Conduct in 2013 or 2014, Plaintiff Fails to Plead Fraud Because He Does Not Assert Reliance ......................................... 17

         E.    The Collaboration Was an Arm's Length Business Relationship, Not a Confidential Relationship ......................................... 18

    IV.   PLAINTIFF HAS NO PATENT CLAIM BECAUSE PLAINTIFF HAS NO PATENT .................................................................................. 20

CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967 (Tenn. Ct. App. Dec. 3, 2010)..................................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................2

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ...................3, 7

*Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936....................3, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................2

*Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140 (Tenn. 2015) ...............................9

*Bishop v. Lucent Techs., Inc.*, 520 F.3d 516 (6th Cir. 2008) .........................................8

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012)............................................8

*Courtright v. City of Battle Creek*, 839 F.3d 513 (6th Cir. 2016)...................................2

*Cumberland & Ohio Co. of Tex. v. Goff*, No. 3:09-cv-436, 2009 WL 3517531 (M.D. Tenn. Oct. 22, 2009) ..................................................................................................9

*Evans v. Pearson Enters.*, 434 F.3d 839 (6th Cir. 2006) .............................................15

*Evans v. Walgreen Co.*, 813 F. Supp. 2d 897 (W.D. Tenn. 2011)..................................9

*Faber v. Ciox Health, LLC*, 331 F. Supp. 3d 767 (W.D. Tenn. 2018) ....................18, 19

*Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141 (Tenn. 2001)..............................................10

*Foster Bus. Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV, 2009 WL 113242 (Tenn. Ct. App. Jan. 15, 2009)..............................................................................19

*Fowler v. McCarter, Catron & East, PLLC*, Case No. 3:16-cv-02835, 2017 WL 1021297 (M.D. Tenn. March 16, 2017)...............................................................8

*Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343 (6th Cir. 2000)..........................15

*Hamm v. Wyndham Resort Dev. Corp.*, No. 3:19-CV-00426, 2019 WL 6273247 (M.D. Tenn. Nov. 25, 2019) ................................................................................14

*Hoover v. Langston Equip. Assocs.*, 958 F.2d 742 (6th Cir. 1992) ...............................3

*John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998) ........................................9

*Mason v. USEC, Inc.*, No. 3:07-cv-10, 2008 WL 4057799 (E.D. Tenn. Aug. 26, 2008)........18, 19

*McElroy Truck Lines, Inc. v. Moultry*, Case No. 3:23-cv-01056, 2024 WL 4593852
    (M.D. Tenn. Oct. 28, 2024) ................................................................................13

*Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588 (Tenn. Ct.
    App. 2001) ....................................................................................................13

*Middle Tenn. Occupational & Envtl. Med., Inc. v. First Health Group Corp.*,
    No. 3-05-0218, 2005 WL 3216282 (M.D. Tenn. Nov. 28, 2005)........................9, 10

*Mike v. Po Group, Inc.*, 937 S.W.2d 790 (Tenn. 1996)....................................................9

*Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546 (E.D.
    Tenn. 2019)................................................................................................8

*Rogers v. First Nat'l Bank*, No. M2004-02414-COA-R3-CV, 2006 WL 344759
    (Tenn. Ct. App. Feb. 14, 2006)..................................................................18

*Romglobal, Inc. v. Miller*, No. E2019-00058-COA-R3-CV, 2020 WL 476904 (Tenn.
    Ct. App. Jan. 29, 2020) ..............................................................................11

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011)............................3, 7

*Security Fed. Sav. & Loan Ass'n v. Riviera, Ltd.*, 856 S.W.2d 709 (Tenn. Ct. App.
    1992) ......................................................................................................15

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 499 (6th Cir. 2008)....................3

*Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 2d 1023 (M.D. Tenn.
    2005)......................................................................................................18

*United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876 (6th Cir. 2021) ..................2

*Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977)..........................................................9

*Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301 (Tenn. 2008).................15

*Webster v. Estate of Dorris*, No. M201402230COAR3CV, 2016 WL 502009 (Tenn.
    Ct. App. Feb. 4, 2016)..........................................................................12, 14

*Woods v. Wolosko*, No. 3:09-0839, 2012 WL 398307 (M.D. Tenn. Feb. 7, 2012) ................11, 12

*Wyatt v. Byrd*, No. W200902635COAR3CV, 2010 WL 3063153 (Tenn. Ct. App.
    Aug. 3, 2010) ..........................................................................................13

**Statutes**

35 U.S.C. § 111 ...............................................................................................................7

35 U.S.C. § 281 .............................................................................................................20

Tenn. Code Ann. § 28-3-105 ...........................................................................................9

Tenn. Code Ann. § 28-3-109 ...........................................................................................8

Tenn. Code Ann. § 61-1-202 .........................................................................................11

Tenn. Code Ann. § 48-208-104 .......................................................................................5

**Rules**

Fed. R. Civ. P. 9 ..............................................................................................................3

Fed. R. Civ. P. 12 ............................................................................................................2

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d
ed. updated Apr. 2022)..............................................................................................3

# INTRODUCTION

Timothy Atchison (Plaintiff) seeks to misuse the Court to extract money from Hubbell

Industrial Controls, Inc. (Hubbell), on claims that he himself acknowledges are unfounded or

worthless. Plaintiff seeks damages regarding intellectual property (IP) he claims to have created

in the mid-2000s and an alleged collaboration from 2008. However, on January 5, 2017, Plaintiff

filed a bankruptcy petition in which he "declare[d] under penalty of perjury" that he had

- no "interests in any incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture,"
- no "equitable or future interest in property,"
- no "[p]atents, … trade secrets, and other intellectual property,"
- no "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment,"
- no "[o]ther contingent or unliquidated claims of every nature,"
- no "[a]ccounts receivable or commissions you already earned," and
- no "[i]nterests in partnerships or joint ventures."

The Court should not countenance Plaintiff's attempt to abuse the judicial process.

Further, even if Plaintiff had any interest in a collaboration or related state-law claims, he

failed to timely assert them. The longest statute of limitations for the asserted state-law claims is

six years. Here, Plaintiff knew of his putative claims no later than July 2015 (when he separated

from Hubbell)—and likely earlier—but did not file his Complaint until nine years later. The

Court should dismiss all state-law claims because of the long-expired statutes of limitations.

Finally, Plaintiff fails to plead sufficient facts to state a claim for any of the asserted

causes of action. He asserts a partnership or joint venture without pleading at least one

requirement of each corporate form—respectively, profit sharing and equal control over the

venture. Plaintiff alleges fraud, but he identifies no falsity in statements made at the time of the

alleged formation of the collaboration and no reliance on statements made near the termination

of his employment. He asserts unjust enrichment, but, by his own admission, he did not own the

IP that is the subject of the claim. He asserts a confidential relationship, but he pleads only an arm's length agreement. He asserts patent infringement, but he does not own any patents.

## ARGUMENT

## I. LEGAL STANDARDS

### A. Motion to Dismiss

A court should dismiss a cause of action when it fails to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). A court deciding a Rule 12(b)(6) motion must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). The court must determine if the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79; *United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 878 (6th Cir. 2021) (holding court "may reject 'mere assertions and unsupported or unsupportable conclusions'") (quoting *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006)), *cert. denied* 142 S. Ct. 1210 (2022). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P.

12(d). However, the court may, without converting the motion, consider any exhibits attached to the complaint, as well as "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (concluding that extrinsic materials may be considered in a motion to dismiss "so long as [the materials] are referred to in the complaint and are central to the claims contained therein") (quoting *Bassett*, 528 F.3d at 430); 5B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. updated Apr. 2022) ("Numerous cases ... have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record … without converting the motion into one for summary judgment.").

### B.     Federal Rule of Civil Procedure 9

Federal Rule of Civil Procedure 9(b) provides, "[A] party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A plaintiff seeking to comply with Rule 9(b) must "allege the time, place, and content of the alleged misrepresentation …; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 499, 504 (6th Cir. 2008) (internal quotation marks omitted). "[T]o effectively plead these elements, a plaintiff must identify, at least generally, 'who [is alleged to have] made particular misrepresentations and when they were made." *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992). "Under this rule, '[c]onclusory statements of reliance are not sufficient to explain with particularity how [the plaintiff] detrimentally relied on the alleged fraud.'" *Bearden v. Honeywell Int'l, Inc.*,  No. 3:09-01035, 2010 WL 1223936, at *5 (W.D. Tenn. Mar. 24, 2010 (quoting *Evans v. Pearson Enters.*, 434

F.3d 839, 852–53 (6th Cir. 2006), and citing *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 353 (6th Cir. 2000) (dismissing fraud claim because the plaintiff had "alleged no facts whatsoever that would support a finding that his decedent relied on Defendants' alleged misrepresentations and concealment")).

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Thirty-Year Career in an IP-Intensive Industry Before Joining Powerohm

As alleged, Plaintiff is a trained electronics design engineer and worked for thirty years in the field of ultra-complex electronics at Bonitron, Inc. (Compl. 2.[1]) In his spare time, Plaintiff experimented with highly complex, highly specialized, and narrowly focused technical subjects. (*Id.* 2–3.) Through this design engineering, Plaintiff conceived an electronic controller device—a brake power module (BPM)—for primary use in motor control systems. (*Id.* 3.)

In 2005, Plaintiff received an offer to serve as a product design engineer at Powerohm Resisters, Inc. (Powerohm), and an offer to participate in an "unrelated proposed plan for a collaboration focused on development and marketing of Plaintiff's novel, ultra-complex **BPM** … **and/or any other items listed in the 'business plan,'** as well as establishing a new division, '**Power Electronics**.'" (*Id.* 3–4.) A "business plan, prepared by Plaintiff," (Business Plan, attached at Plf.'s Ex. 1) documents the proposed "joint collaboration." (*Id.* 3, 7.)

### B.  Plaintiff's Employment with Powerohm

After approximately three years of pursuit, Plaintiff agreed to a "casual, 'at will' position" as a Powerohm employee. (*Id.* 4.) Thereafter, Plaintiff and Powerohm allegedly entered a collaboration to develop and sell the BPM and other products through a "new division" of

---

[1] Hubbell cites to pages and not paragraphs in the Complaint because Plaintiff did not include numbered paragraphs.

Powerohm called Power Electronics (Collaboration). (*Id.* 4–6.) Although not documented in the Business Plan, Plaintiff oversaw the technical and operational aspects of the Collaboration, while Powerohm "provide[d] the financing [and] business and legal oversight for the expensive manufacturing of the new devices." (*Id.* 6–7.) Although not documented in the Business Plan, Plaintiff agreed to receive a "seemingly-modest (but overall equitable)" "three (3%) percent of the gross annual global receipts" from the Collaboration. (*Id.* 7.) Plaintiff did not execute an "'assignment of inventions' or 'ownership of discoveries.'" (*Id.* 5.)

As documented in the Business Plan, Power Electronics was a division of Powerohm. No business with the name Power Electronics is or has been registered with the Tennessee Secretary of State. (Def.'s Ex. 1.) Accordingly, no registered agent was appointed for it. Plaintiff was designated as the Registered Agent in Tennessee for Texas-based Powerohm. (Def.'s Ex. 2.) This status confers no rights and holds no legal significance other than identifying an "agent for service of process, notice, or demand required or permitted by law to be served on" the corporate entity. Tenn. Code Ann. (TCA) § 48-208-104.

Through the Collaboration, Plaintiff continued to develop the BPM and shared information about it with Powerohm personnel. (*E.g.*, Compl. 4.) Starting in or around 2008, Plaintiff and Powerohm discussed the "potential" market for the BPM. (*Id.* 5.) Initially, Powerohm personnel were "complimentary" about the BPM and "acknowledg[ed] … the absence of any similar, competitive device." (*Id.* 5.) Powerohm advised Plaintiff that the Collaboration was "perceived as viable, realistic, and profitable." (*Id.* 11.) Plaintiff was "assured … that his innovation would be nurtured and expanded by Powerohm." (*Id.* 11.)

### C.     Hubbell's Acquisition of Powerohm

In 2013 and early 2014, the shareholders of Powerohm negotiated the sale of their shares to Hubbell. (*Id.* 9.) On January 16, 2014, Hubbell acquired all of the stock of Powerohm. (*Id.*

13.) Plaintiff concedes that he was not consulted in the sale of Powerohm or any alleged Power Electronics division to Hubbell. (*Id.*) However, Plaintiff alleges that before and after closing, Hubbell became aware of Powerohm's alleged Power Electronics division and the Collaboration. (Compl. 9.)

### D. Hubbell Statements about the Collaboration

According to Plaintiff, Hubbell expressed initial "enthusiasm for the adoption and implementation" of the Collaboration, (*id.* 10–11), and, later, "waning enthusiasm," (*id.* 10). In the interim, Hubbell indicated that it "agreed to not dismantle the new division." (*Id.* 12.) And, after months, Hubbell made "ambiguous, vague expressions of uncertainty about the future" of the Collaboration. (*Id.* 12.) Power Electronics became a topic of decreasing discussion because it was "perceived as an idea that had not advanced in a positive manner." (*Id.* 13.) After the close of the transaction, Hubbell expressed "diminished enthusiasm" for Power Electronics and an "irrelevance and unimportance to the BPM." (*Id.* 15.)

### E. Powerohm's Sale of BM "BG" Series Braking Modules

Since at least March 2014, while Hubbell employed Plaintiff, Hubbell's Powerohm division sold a product called the Braking Module "BG" Series or the BM "BG" Series to customers. (The Powerohm Instruction Manual for BM "BG" Series Braking Modules, dated March 18, 2014 (Instruction Manual), is attached as Defendant's Exhibit 3.) Plaintiff reproduced the first page of the Instruction Manual nearly verbatim in paragraphs (1) through (3) on page 18 of the Complaint. (*Compare* Compl. 18 *with* Def.'s Ex. 3 at 4.) The Court may consider the Instruction Manual, without converting the Motion to a motion for summary judgment, because

the Instruction Manual is referred to in the Complaint and is central to the claims therein.

*Rondigo*, 641 F.3d at 681; *Bassett*, 528 F.3d at 430.

While Powerohm and Hubbell sold the BM "BG" Series, Plaintiff worked as a "'product design engineer'"—a role that entailed both "sales and engineering" responsibilities. (Compl. 3.)

In July 2015, Hubbell terminated Plaintiff's employment contract. (*Id.* 13–14.)

### F. Plaintiff's Sworn Statements about the Collaboration and Related IP

In January 2017, Plaintiff filed Official Form 101 Voluntary Petition for Individuals Filing for Bankruptcy (Petition). (Def.'s Ex. 4.) Plaintiff, represented by counsel, signed the Petition under penalty of perjury. (*Id.* at 7–8.) Plaintiff declared that he had no interest in any unincorporated businesses, including partnerships or joint ventures; no trusts, equitable or future interest in property, or exercisable rights or powers; no patents or other IP; no claims against third parties; and no accounts receivable or commissions earned. (*Id.* at 12–15.) The Court may consider the Petition, without converting this Motion to a motion for summary judgment, because it is both a "public record[]" and a matter central to the claims in the Complaint whose authenticity is unquestioned. *Rondigo*, 641 F.3d at 681; *Bassett*, 528 F.3d at 430.

### G. Plaintiff's Belated Provisional Patent Applications

On December 23, 2023, Plaintiff filed with the U.S. Patent and Trademark Office two provisional applications under 35 U.S.C. § 111(b) associated with the BPM. (Plf.'s Ex. 1.)

## III. THE STATE-LAW CAUSES OF ACTION DO NOT ASSERT ANY FACIALLY PLAUSIBLE CLAIMS

### A. The Applicable Statutes of Limitations Bars All State-Law Claims

Plaintiff's state-law claims—A. Joint Venture/Accounting, B. Unjust Enrichment, C. Fraud and Intentional Misrepresentation by Defendant Hubbell, and D. Constructive Trust/Confidential Relationship, (Compl. 27–29)— are time-barred, and the Court should

dismiss them because, as pleaded, Plaintiff failed to timely prosecute them. The applicable statutes of limitation are six years for the contract claim and three years for the remaining state-law claims. Plaintiff's claims accrued no later than (and likely before) July 2015, and Plaintiff waited to file until 2024, nine years after accrual.

Although generally "[s]tatute-of-limitations defenses are [more] properly raised in Rule 56 motions [for summary judgment], rather than Rule 12(b)(6) ... motions, because '[a] plaintiff generally need not plead the lack of affirmative defenses to state a valid claim.'" *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019) (quoting *Paulin v. Kroger Ltd. P'ship I*, No. 3:14-cv-669, 2015 WL 1298583, at *4 (W.D. Ky. Mar. 23, 2015)); *Fowler v. McCarter, Catron & East, PLLC*, Case No. 3:16-cv-02835, 2017 WL 1021297 (M.D. Tenn. March 16, 2017) (rejecting argument that motion to dismiss must be converted to motion for summary judgment). However, when it is "apparent from the face of the complaint that the time limit for bringing the claim[s] has passed," then the plaintiff, if he wishes to avoid dismissal, has an "obligation to plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover*, 958 F.2d at 744)). When "the allegations in the complaint affirmatively show that a claim is time-barred," then "dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012), *cert. denied* 568 U.S. 1157 (2013).

TCA § 28-3-109 provides a six-year statute of limitations for contract claims.[2] TCA § 28-3-105 provides a three-year statute of limitations for injuries to personal property, actions for

---

[2] Should the Court deny the Motion, Hubbell reserves the right to contend that, based on facts revealed through discovery, the Court should choose a substantive law other than Tennessee law to evaluate Plaintiff's claims.

conversion of personal property, and actions for unpaid commissions or other compensation owed to an employee or independent contractor, including claims for unjust enrichment.

To determine which statute of limitations applies to a specific type of claim, "a court must identify the gravamen of [the] claim." *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 141 (Tenn. 2015). Courts look to the "basis for which the damages are sought" to identify the gravamen of the claim. *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 793 (Tenn. 1996).

Courts treat economic loss by fraud or misrepresentation as an injury to personal property and therefore subject to a three-year statute of limitations. *E.g.*, *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 934–35 (W.D. Tenn. 2011), *aff'd* 559 Fed. Appx. 508 (6th Cir. 2014). Similarly, although "[t]here is no specific statute of limitations in Tennessee law for unjust enrichment," *e.g., Middle Tenn. Occupational & Envtl. Med., Inc. v. First Health Group Corp.* (*MTOEM*), No. 3-05-0218, 2005 WL 3216282, at *4 (M.D. Tenn. Nov. 28, 2005), the three-year statute of limitations in TCA § 28-3-105 applies. *Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977). Finally, the gravamen of Plaintiff's confidential relationship is a fiduciary duty claim wherein Hubbell exploited Plaintiff's property, that is, damaged Plaintiff's personal property. Accordingly, Plaintiff's fraud claim, unjust enrichment claim, and confidential relationship claim each have a three-year statute of limitations.

To determine when to start the statute of limitations for certain torts, Tennessee courts apply two rules—the "discovery rule" and the "single-injury rule." *MTOEM*, 2005 WL 3216282, at *3–4. Under the "discovery rule," a claim accrues "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (citing cases); *Cumberland & Ohio Co. of Tex. v. Goff*, No. 3:09-

cv-436, 2009 WL 3517531, at *4 n.8 (M.D. Tenn. Oct. 22, 2009). The discovery rule prevents "the running of the limitations period whenever, and for whatever reason, the plaintiff could not have reasonably known he was injured." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001). Under Tennessee's single-injury rule, one tortious act may be made up of multiple actions occurring over time. *MTOEM*, 2005 WL 3216282, at *3. Pairing these two rules, a cause of action sounding in tort accrues once a plaintiff discovers the first injury and knows that defendant caused it, and a plaintiff must bring suit within the applicable statute of limitations even if the injury continues. *Id.* at *4.

Here, the latest Plaintiff's causes of action could have accrued is July 2015—the date of separation from Hubbell—because, before then, four events, known to him, put him on notice of his alleged claims against Hubbell and started the running of the statutes of limitations.

- First, as pleaded, on January 16, 2014, Hubbell acquired Powerohm and its Power Electronics division without Plaintiff transferring any personal interest in the Collaboration, that is, Power Electronics. As of that date, Plaintiff was on notice that neither Powerohm nor Hubbell believed he was a participant in a partnership or joint venture known as Power Electronics.
- Second, no later than March 2014, while Plaintiff held a sales position at Hubbell's Powerohm division, Powerohm was selling "BG" Braking Modules with the IP allegedly developed through the Collaboration. (Def.'s Ex. 3.) This action put Plaintiff on notice that Powerohm and Hubbell believed that they had the right to sell these products.
- Third, as pleaded, in 2014 or 2015, "controversies were generated by [Powerohm or Hubbell] management, who abruptly *declined to pay to Plaintiff the earned commissions* owed to Plaintiff on previous (both *related* and unrelated *to the j/v*) corporation work." (Compl. 13 (emphasis added).) At that point, Plaintiff knew of at least one element of his contract claims—breach—evidenced by Hubbell's nonpayment of "earned commissions owed to Plaintiff … related … to the j/v." (*Id.*) In addition, these disputed commissions put Plaintiff on notice of his fraud claims because he was aware that, notwithstanding Hubbell's alleged waning interest, Hubbell continued to sell the BPM products.
- Fourth, "[i]n the same pre-termination time-frame," Hubbell "dispatched Hubbell employee, Stuart Xiang, to the Defendants' Kentucky facility to retrieve and secure a duplicate copy of Plaintiff's original rough drawings; sketches, parts lists; and active vendor information." (*Id.* 15.) Hubbell's seizure of what Plaintiff identifies as his intellectual property—that is, Hubbell's alleged conversion of

Plaintiff's intellectual property—can provide no clearer a signal than anything else that Hubbell's have asserted rights over Plaintiff's intellectual property.

Plaintiff's own allegations confirm that he was aware of his purported injury at Hubbell's hands in 2015 or earlier but delayed until 2024 to file his Complaint. Accordingly, the Court should dismiss the Complaint because of the lapsing of the statute of limitations.

**B.    Plaintiff Fails to Plead Elements of His Partnership and Joint Venture Claims**

Plaintiff fails to allege facts sufficient to state a claim for a partnership or a joint venture between him and Powerohm. (In the absence of a written agreement, Plaintiff must prove his partnership or similar claim of joint ownership by clear and convincing evidence. *Romglobal, Inc. v. Miller*, No. E2019-00058-COA-R3-CV, 2020 WL 476904, at *4 (Tenn. Ct. App. Jan. 29, 2020 (discussing *In re Estate of Threefoot*, No. W2005-02942-COA-R3-CV, 2006 WL 3114147 (Tenn. Ct. App. Nov. 3, 2006)).) Plaintiff's allegations lack the profit sharing required to plead a partnership and the equal right of control required to plead a joint venture. Plaintiff's sworn Petition confirms the absence of a partnership or joint venture. (Def.'s Ex. 4 at 12.)

*Partnership.* Under Tennessee law, a partnership is formed by the "association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit." TCA § 61-1-202(a). The TCA provides "sharing of gross returns does not by itself establish a partnership." TCA § 61-101-202(c)(2). The TCA further provides that a "person who receives a share of the profits of a business is presumed to be a partner ..., unless the profits were received in payment ... (B) For services as an independent contractor or of wages or other compensation to an employee." TCA § 61-101-202(c)(3). The Tennessee Supreme Court explained, "If the parties' business brings them within the scope of a joint business undertaking for mutual profit— that is to say, if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them—the result is a partnership...." *Woods v.*

*Wolosko*, No. 3:09-0839, 2012 WL 398307, at *3 (M.D. Tenn. Feb. 7, 2012) (finding no partnership where plaintiff failed to show profits sharing). In *Webster v. Estate of Dorris*, the Court of Appeals of Tennessee affirmed a ruling that there was no implied partnership or joint venture between a contractor and his real estate agent wife in a development. No. M201402230COAR3CV, 2016 WL 502009, at *5–6 (Tenn. Ct. App. Feb. 4, 2016). The court reasoned that no partnership existed because (i) the wife did not act as a co-owner of the husband's contracting company, *id.* at *5; (ii) the wife lacked authority to control any aspect of the business and did not have access to the company's accounts; *id.*; (iii) the wife's design suggestions were subject to her husband's approval, *id.*; and (iv) the wife's commission from the sale of the home was not the type of profit sharing which would give rise to an implied partnership or joint venture, *id.* at *6.

Here, Plaintiff avers no sharing in the profits of Power Electronics, a required component of a partnership. At most, the Complaint alleges financial obligations to Plaintiff that are a function of gross sales, not profits. (Compl. 7, 11, 15.) As the court in *Webster* concluded, such commission-based compensation is insufficient under the applicable statute. Similarly, the court in *Woods* concluded that no partnership is created by a party receiving the payment of an expense, such as rent, because expenses are not profit sharing. 2012 WL 398307 at *3. The court in *Woods* also looked to other indicia of a partnership—joint tax returns and bank accounts, *id.*— that are lacking here. Even if the purported 3% of gross sales were characterized as profits, Plaintiff alleges no role or rights other than providing services as an independent contractor or employee. Profit sharing in that context is insufficient to state a claim of partnership.

Further, the documents included or referred to in the Complaint also demonstrate that no partnership was created. The 2005 email, on which Plaintiff relies to assert a partnership, only

identifies a "new division," not a partnership. (Plf.'s Ex. 2 at 2.) It contains not even an iota of evidence supportive of a finding of partnership; of course, it also predates the alleged creation of the partnership in 2008. Similarly, the Business Plan, which Plaintiff prepared, lacks a single statement that even suggests a partnership. Section 2.1 "Company Ownership" reads: "Power Electronics is a Division of Powerohm Resistors...." (*Id.* at 8.) It does not (i) identify Power Electronics as a partnership, (ii) identify Plaintiff as having an interest in Power Electronics, or (iii) refer to Plaintiff's purported 3% commission. Finally, Plaintiff concedes that Powerohm and Power Electronics were sold to Hubbell pursuant to an agreement in which he had no input and from which he received no benefit. (Compl. 13.) Plaintiff's *post hoc* awareness of this sale and lack of apparent authority in the transaction demonstrates his lack of status as a partner to influence or benefit from the transfer of Power Electronics to Hubbell.

*Joint Venture.* Under Tennessee law, "[a] joint venture is a relationship which arises from an agreement between two or more persons to undertake some common objectives for the benefit of all in pursuit of which each is authorized to act for the other." *Wyatt v. Byrd*, No. W200902635COAR3CV, 2010 WL 3063153, at *4 (Tenn. Ct. App. Aug. 3, 2010) (quoting *Ollice v. Pugh*, No. 87–8–II, 1987 WL 4902, at *4 (Tenn. Ct. App. May 27, 1987)); *also McElroy Truck Lines, Inc. v. Moultry*, Case No. 3:23-cv-01056, 2024 WL 4593852, at *4 (M.D. Tenn. Oct. 28, 2024) (rejecting claim for joint venture where plaintiff failed to plead "equal right to control" or "profit-sharing"). "A joint venture is similar, but not identical, to a partnership, and has been described by our Supreme Court as 'something like a partnership, for a more limited period of time, and a more limited purpose.'" *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 605 (Tenn. Ct. App. 2001) (quoting *Fain v. O'Connell*, 909 S.W.2d 790, 792 (Tenn. 1995)). "The elements required to establish a joint venture are: (1) a common

purpose, (2) some manner of agreement among the parties, and (3) the equal right of each 'to control the venture as a whole and any relevant instrumentality.'" *Webster*, 2016 WL 502009, at *7 (quoting *King v. Flowmaster, Inc.*, No. W2010–00526–COA–R3CV, 2011 WL 4446992, at *2 (Tenn. Ct. App. Sept. 27, 2011)).

Here, Plaintiff has not and cannot allege an equal right to control the Collaboration. The Complaint merely contains allegations akin to the functions of an employee compensated on an incentive basis. For example, Plaintiff himself pleads that his ability to control the Collaboration was limited to overseeing its technical and operational aspects. Plaintiff stated that Powerohm "was to provide the financing [and] business and legal oversight for the expensive manufacturing of the new devices." (*Id*. 6.) Plaintiff's limited control is antithetical to the creation of a joint venture where each party has a right of full control. In addition, Plaintiff acknowledges the Collaboration was sold by the shareholders of Powerohm to Hubbell in 2014. A joint venturer would have had input into such a sale, yet the sale proceeded without any input from Plaintiff.

### C.    Hubbell Received No Benefit to Support an Unjust Enrichment Claim

To assert an unjust enrichment claim, a plaintiff must allege "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Hamm v. Wyndham Resort Dev. Corp.*, No. 3:19-CV-00426, 2019 WL 6273247, at *8 (M.D. Tenn. Nov. 25, 2019) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)).

> Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist. Courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. … A contract cannot be implied, however, where a valid contract exists on the same subject matter.

*Id.* (citations and internal quotation marks omitted).

Here, Plaintiff conferred no benefit on Hubbell to which it was not entitled. Although Plaintiff's 2024 Complaint alleges a benefit, in 2019, he declared under penalty of perjury that any IP rights that he might have had were worthless and that he had no claims for damages against Hubbell. (Def.'s Ex. 4 at 12–15.) In addition, contemporaneous with Plaintiff's separation from Hubbell, Plaintiff was aware that Hubbell was selling products with this IP and was declining to make incentive/commission payments to him under any agreement. In such a context, the natural expectation is that a party who had rights would pursue those rights. Plaintiff did not, though, confirming that the only reasonable inference is that he knew at the time that he had no such rights. Hubbell was not unjustly enriched because it received nothing to which it was not already entitled and for which it had not already compensated Plaintiff.

### D. Plaintiff Fails to State a Claim for Fraud Because He Does Not Allege False Representations or Reliance

To state a claim for fraud under Tennessee law, a plaintiff must show that:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (citations omitted). "False representations alone, however, will not affect the validity of a transaction. The purchaser must have relied on the misrepresentations...." *Security Fed. Sav. & Loan Ass'n v.*

*Riviera, Ltd.*, 856 S.W.2d 709, 712 (Tenn. Ct. App. 1992) (citation omitted). "Conclusory statements of reliance are not sufficient to explain with particularity how [the plaintiff] detrimentally relied on the alleged fraud." *Evans*, 434 F.3d at 852–53; *see also Glassner*, 223 F.3d at 353 (dismissing fraud claim because the plaintiff had "alleged no facts whatsoever that would support a finding that his decedent relied on Defendants' alleged misrepresentations and concealment").

> i. *Regarding the Formation of the Collaboration, Plaintiff Fails to Plead Falsity Because He Acknowledges the Truth of the Statements*

To the extent that Plaintiff alleges fraud in the formation of the Collaboration, he fails to plead falsity. Indeed, Plaintiff pleads the truthfulness of the representations from formation of the Collaboration until just before Hubbell's acquisition of Powerohm.

Powerohm statements before (or during the early period of) the Collaboration were statements of opinion, not past or present fact. Plaintiff alleges that Powerohm was "complimentary." (Compl. 5.) Similarly, before Hubbell's acquisition of Powerohm, Powerohm advised Plaintiff that the Collaboration was "perceived as viable, realistic, and profitable." (*Id*. 11.) Plaintiff was "assured … that his innovation would be nurtured and expanded by Powerohm." (*Id.* 11.) The closest Plaintiff gets to pleading a fact is that Powerohm "acknowledge[ed] to Plaintiff the absence of any similar, competitive device." (*Id*. 5.)

Even if the above are actionable statements of fact, Plaintiff does not allege them to be false and to be recklessly or knowingly made. Plaintiff concedes that, when made, "those first assurances were initially sincere, reflecting a genuine, threshold intent by Powerohm to further the BPM joint venue plan and purposes." (*Id*. 11.) Plaintiff, of course, does not allege falsity or knowledge or recklessness of these statements because Plaintiff himself believes now and believed then that the statements were true—this is the crux of his claims. In addition to this

concession, Plaintiff pleads no facts that suggest Powerohm or Powerohm personnel did not sincerely hold these opinions.

The Court, therefore, should dismiss any fraud claim relating to the formation of the Collaboration because Plaintiff pleads no falsity of these statements of past or present fact.

    ii.    *Regarding Conduct in 2013 or 2014, Plaintiff Fails to Plead Fraud Because He Does Not Assert Reliance*

Regarding Hubbell's acquisition of Powerohm, Plaintiff fails to plead reliance.

Plaintiff only pleads statements that are not statements of past or present fact. Plaintiff avers that Hubbell had initial "enthusiasm for the adoption and implementation" of the Collaboration and later "waning enthusiasm" or "diminished enthusiasm" for Power Electronics and a "perce[ption that the Collaboration] as an idea … had not advanced in a positive manner." (*Id*. 10–11, 13.) Plaintiff states that Hubbell made "ambiguous, vague expressions of uncertainty about the future" of the Collaboration. (*Id*. 12.) Similarly, Plaintiff pleads that Hubbell raised the "irrelevance and unimportance to the BPM." (*Id*. 15.) Finally, Plaintiff alleges that Hubbell "agreed to not dismantle the new division." (*Id*. 12.) (Notably, Plaintiff never alleges that Power Electronics was dismantled and therefore does not allege falsity.)

Plaintiff fails to allege reliance on these statements of opinion or future business projections. The core of Plaintiff's fraud claim is that, after Hubbell's acquisition of Powerohm, Hubbell personnel misled him about their interest in developing the BPM. However, Plaintiff never alleges he took or refrained from any act because of Hubbell's allegedly false statements. The totality of Plaintiff's reliance allegations appears in his summaries of the elements of fraud and intentional misrepresentation/fraud in the inducement (*Id*. 28–29 ("Plaintiff Atchison … was justified in relying upon the truth of the representation," and "Plaintiff justifiably reli[ed] upon the information provided by Defendant Hubbell.").) Such recitation of the elements is not

sufficient to state a claim. *Bearden*, 2010 WL 1223936, at *5. As in this Court's decision in

*Bearden*, Plaintiff alleges only false statements and not any conscious decision to take or refrain

from an action that would amount to an element of the causes of action. Accordingly, Plaintiff

has not and cannot state a claim of fraud, and the Court should dismiss this cause of action.

### E. The Collaboration Was an Arm's Length Business Relationship, Not a Confidential Relationship

Neither Plaintiff's arm's length agreement with Powerohm nor his colleagues'

friendliness is sufficient to state a claim for breach of a fiduciary, confidential relationship.[3]

"[T]o recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary

relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to

the defendant as a result of that breach." *Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-

COA-R3-CV, 2010 WL 4939967, at *3 (Tenn. Ct. App. Dec. 3, 2010) (citing 37 C.J.S. Fraud §

15 (2008)). Tennessee law distinguishes between two types of fiduciary relationships—those that

are fiduciary *per se* by tradition and those that are confidential based on the particular facts.

*Faber v. Ciox Health, LLC*, 331 F. Supp. 3d 767, 780 (W.D. Tenn. 2018), *aff'd* 944 F.3d 593

(6th Cir. 2019). The court in *Mason v. USEC, Inc.*, identified the typical relationships that are

fiduciary *per se* under Tennessee law—trustee-beneficiary, attorney-client, parent-child,

guardian-ward, physician-patient, nurse-invalid, and confidential friend-adviser. No. 3:07-cv-10,

2008 WL 4057799, at *5 (E.D. Tenn. Aug. 26, 2008). The court in *Rogers v. The First National*

*Bank* articulated the standard for a confidential relationship that rises to a fiduciary level.

> In general terms, a confidential relationship is any relationship which gives a
> person dominion and control over another. It is not merely a relationship of
> mutual trust and confidence, but rather a confidential relationship is one where
> confidence is placed by one in the other and the recipient of that confidence is the
> dominant personality, with ability, because of that confidence, to exercise

---

[3] "'[C]onstructive trust' is not a cause of action, but rather a remedy…." *Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 1023, 1029 n.2 (M.D. Tenn. 2005) (citation omitted).

> dominion and control over the weaker or dominated party. A confidential
> relationship is created when one person has dominion and control over another.

No. M2004-02414-COA-R3-CV, 2006 WL 344759, at * 8 (Tenn. Ct. App. Feb. 14, 2006)

(citations omitted); *also Foster Bus. Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV,

2009 WL 113242, at *13 (Tenn. Ct. App. Jan. 15, 2009).

Courts in Tennessee typically decline to find arm's length relationships rising to the level

of fiduciary *per se* or confidential. The court in *Mason* distinguished the employer-employee

relationship because at-will employment confirms the arm's length nature of the relationship, the

nature of the relationship is not comparable to the other types of fiduciary relationships, and

employment contracts do not resemble inherently fiduciary contracts, such as insurance

contracts. 2008 WL 4057799, at *5. Further, in commercial transactions, the mere fact that one

contracting party has greater expertise in the pertinent business area does not suffice to establish

that such party dominates or controls the other. *See, e.g.*, *Faber*, 331 F. Supp. 3d at 781. In fact,

"[t]he general rule is that 'parties dealing at arm's length lack the sort of relationship of trust and

confidence that gives rise to a fiduciary relationship.'" *Id.* (quoting *Hall v. Liberty Ins. Corp.*,

No. 3:13-CV-206-TAV-HBG, 2013 WL 6571928, at *6 (E.D. Tenn. Dec. 13, 2013)).

Here, Plaintiff pleads no special circumstances that could establish a confidential

relationship. Plaintiff, a 30-year veteran of the IP-intensive industry at the time of the

Collaboration, alleges nothing more than an arm's length negotiation, over the course of three

years (2005–2008), with Powerohm while he was an employee of Bonitron, not Powerohm.

(Compl. 2–5.) The arm's length nature of this negotiation is confirmed by Plaintiff's allegation

that the compensation under the Collaboration was "overall equitable." (*Id.* 7.) Similarly,

Plaintiff's 2008 employment contract was "amicable and financially productive." (*Id.* 4.) He

alleges no element of the Collaboration or his employment that gave Powerohm dominion and control over him. The Court should dismiss Plaintiff's confidential relationship claim.

## IV. <u>PLAINTIFF HAS NO PATENT CLAIM BECAUSE PLAINTIFF HAS NO PATENT</u>

To bring a patent violation claim, a plaintiff must have rights in an issued U.S. patent. 35 U.S.C. § 281 ("A *patentee* shall have remedy by civil action for infringement of his *patent*.") (emphasis added). Here, Plaintiff asserts a claim of patent infringement solely "based upon the documents attached as Exhibit 1 to the Complaint." (Compl. 29.) Plaintiff admits he does not have an issued patent, but rather only "patent pending protection" or "preliminary patent approval" by virtue of filing provisional patent applications. (*Id.* 17, 4.) Plaintiff's patent infringement claim is facially deficient and cannot be cured because he does not have any valid patent rights. The Court should dismiss Plaintiff's cause of action for "Patent Violation."

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss all causes of action in the Complaint.

Respectfully submitted,

<u>/s/ Howell O'Rear</u>
Howell O'Rear (BPR #26509)
Seth M. McInteer (BPR #26471)
McInteer & O'Rear PLC
2209 Crestmoor Rd., Ste. 310
Nashville, TN 37215
howell@mcolawfirm.com
seth@mcolawfirm.com
Ph. 615-724-6207
Fax 615-523-1311

William E. Bradley (*pro hac vice*)
Kyle G. Hepner (*pro hac vice*)
Robinson & Cole LLP
1201 Pennsylvania Avenue, NW, Ste. 820
Washington, DC 20004
wbradley@rc.com
khepner@rc.com

Ph. 771-213-5602

*Counsel for Hubbell Industrial Controls, Inc.*

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was electronically filed with the Court using the CM/ECF system to the following on November 13, 2024:

Wm. Kennerly Burger (BPR #3731)
Burger Law Firm
12 North Public Square
Murfreesboro, TN 37130
T: 615-893-8933
F: 615-893-5333
kenburger@comcast.net

*/s/ Howell O'Rear*