**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT FOR TENNESSEE**

| | | |
|---|---|---|
| **TIMOTHY ALLEN ATCHISON** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action Number 3:24-cv-922** |
| | ) | |
| **v.** | ) | **Jury Demand** |
| | ) | |
| | ) | **Judge Trauger** |
| **HUBBELL INDUSTRIAL CONTROLS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

---

**Index to the Plaintiff's Response:**

| | | | |
|---|---|---|---|
| **I.** | **Introductory Comments** | | **Page 1** |
| **II.** | **Discussion of the Applicable Standards Pursuant to FRCP Rule 12(b)(6) (Failure to State a Claim)** | | **Page 2** |
| **III.** | **Discussion of the FRCP Rule 12(b)(6) Pleading Issues** | | **Page 6** |
| | **A.** | **The Complaint Adequately Pleads the Existence of a Joint Venture** | **Page 6** |
| | **B.** | **Complaint Fact Allegations Cited** | **Page 11** |
| | **C.** | **The Prima Facie Elements Necessary to Adequately Plead Fraudulent Concealment** | **Page 13** |
| | **D.** | **The Factual Nature of Fraudulent Concealment and the "Discovery Rule"** | **Page 16** |
| | **E.** | **Plaintiff's Claims of Hubbell's Unjust Enrichment** | **Page 21** |
| | **F.** | **The Effect of Plaintiff's 2023 Patent "Provisional Filing"** | **Page 23** |

# I.  INTRODUCTORY COMMENTS

A.      For initial clarification, Plaintiff concedes that Defendant **Hubbell had no duty,** at any time: (1) to ever <u>complete</u> the "venture" that it procured from Powerohm and Atchison; (2) to <u>retain</u> Atchison in their employment; (3) to <u>explain</u> the reasoning to Atchison when the "venture" was abruptly abandoned in 2015; (4) to <u>return</u> to Atchison the "digital zip drive" contents that was delivered to Hubbell's envoy, Stuart Jiang. Conversely, Hubbell **did have a fiduciary duty** to not conceal from Atchison their later "revised" plans to exploit Atchison's personal intellectual property, without telling him, by discreetly merging it into their product line, producing many millions of unaccounted profits, for which Atchison was entitled to his agreed three-percent commission. With both parties offering facts and documents beyond the Complaint content, Defendant's motion should be converted, pursuant to FRCP Rule 12(d), to meet the procedural requirements of FRCP Rule 56. After correctly briefing the procedural standard for weighing an FRCP Rule 12(b)(6) Motion to Dismiss, the Defendant's Memorandum deviates from that standard, and argues—through factual comments—what amounts to an FRCP Rule 56 Motion for Summary Judgment.

B.      Considered against either procedural standard, Plaintiff insists that the claims are properly stated in the Complaint, and that there are genuine issues of material fact which may not be addressed as issues of law. With no competent factual support, the Defendant has attached to its Memorandum nearly 60 pages of documentation, while offering factual comments throughout the Memorandum about the attachments. A brief, odd example of that approach is the Defendant's conclusory opinion offered to dispute the Plaintiffs' fraudulent concealment claims. Defendant suggests that the Plaintiff is somehow barred from his present claims against Hubbell because his 2017 bankruptcy petition "did not list" the Power Electronics venture as a personal

intellectual property or business venture. In its introduction to its Motion, the Defendant sharply criticizes as an "abuse of the judicial process" Plaintiff's pursuit of a legal remedy after he accidentally learned through his routine work research that he had been deceived by Hubbell. Certainly, Atchison would not have listed as a bankruptcy "asset" an "interest" that he, for good reason, trustingly and pragmatically believed had been appropriately abandoned, and was worthless to him. The Defendant's mis-portrayal of Plaintiff Atchison's victimization, based on Hubbell's fraud, is just an inexplicable opinion in its introductory comments, contrasting the competent fact allegations detailing the concealed fraud by Hubbell.

## II. <u>DISCUSSION OF THE APPLICABLE STANDARD PURSUANT TO FRCP RULE 12 (FAILURE TO STATE A CLAIM)</u>

A. Preceding Hubbell's many fact-related comments, the Defendant correctly describes the proper standards that should apply to a Rule 12 Motion to Dismiss. Similarly, the Plaintiff does not dispute the requirements for pleading with particularity any circumstances constituting fraud, as required by FRCP Rule 9(b). As addressed below, Plaintiff believes that those applicable standards have been satisfied in the details set forth in the 31-page Complaint, detailing concisely the <u>who</u>, <u>what</u>, <u>when</u>, <u>why</u>, and <u>how</u> (to the extent knowable prior to discovery) of the Defendant's fraudulent acquisition of the Plaintiff's intellectual property. Opting for broad conclusory factual denials, the Defendant skirts the material factual allegations that would preclude dismissal even in a summary judgment context, much less a Rule 12 Motion. Certainly, as is inherent in fraudulent concealment claims, Plaintiff's pre-discovery information admittedly remains limited. The record reflects Plaintiff's early effort to invite answers and documents that Hubbell remains reluctant to release.

B. Admitted at this Rule 12 stage are: (1) the claims pertaining to the existence of a **"venture"** that commenced with (non-party) Powerohm, later assumed by Hubbell, and (2) the

"Power Electronics" business plan (Complaint, Document 1, Ex. 2) which was assembled in the early stages of the described "**venture,**" and predicated <u>entirely</u> upon Plaintiff's Brake Power Module innovations. What eventually happened to that "assemblage" of joint venture documentation, eventually (and trustingly) hand-delivered to Hubbell's envoy? Only Hubbell possesses that answer—no way for Atchison to meaningfully understand at this point. Concisely, Plaintiff's claim is that he has recently learned of the Defendant's decision to market the "Brake Power Module" <u>component</u> innovations that he had been directly told were no longer a source of interest to Hubbell after its acquisition of the Powerohm business group, with its various tangible and intangible assets (Complaint, Document 1, ¶ II(C), Page ID 9 – 16). The fact citations below describe Mr. Atchison's inadvertently learning of Hubbell's subterfuge, as the (previously, much-discussed) high-priority Power Electronics joint venture was openly abandoned, just **<u>after</u>** Atchison's delivery of the zip drive specifications, and just **<u>before</u>** Atchison's suspicious termination. Hubbell (with no reason offered) decided that they no longer needed Mr. Atchison around, and, more pertinently, that the BPM innovation project had suddenly become unimportant to Hubbell.

C.  See the Complaint, Document 1, ¶ II(C), Page ID 9 – 16), and Response III B fact listings below at Response page 11.  Preliminarily, as a concise overview:

(1)      Former employer Powerohm had recognized and appreciated the uniqueness of the Plaintiff's personal, home experimental work with Brake Power Modules, leading to Powerohm's joint venture collaboration with their employee, as evidenced by the (otherwise unexplained) joint creation of "Power Electronics." The "business plan" and emails (copies attached) are based on Plaintiff's "Brake Power Module" <u>innovations</u>. The Defendant's Memorandum elects to attach no material relevance to the origin, history, abandonment, **or**

**present whereabouts,** of the "Power Electronics" "venture." Through discussions with the Powerohn and Hubbell management teams, Hubbell soon realized that they could exploit the "innovations" detailed on Atchison's "zip drive" to their financial <u>benefit,</u> and to the naïve (no business experience) employee's financial <u>detriment.</u>

      (2)     Where in its Motion Memorandum does Hubbell even address the **"venture"** labeled "Power Electronics," for whom Plaintiff Atchison was named by Powerohm as its Tennessee registered agent?

      (3)     What pleading "due diligence" has been performed by Defendant Hubbell? Is Hubbell unaware that its own records (initially generated by Powerohm) reflect Mr. Hinton's enthusiasm in **<u>communicating to employee Atchison</u>** regarding the early stages of the planned, pending **"venture"?**

> **"…As we look forward, we are definitely interested in putting a plan together to examine what our future possibilities might be….. <u>A completed business plan</u> will determine the profitability of <u>the venture for which we have discussed,</u> and give us the required credibility in the eyes of our financial institution." (Complaint Exhibit (amended) 2, ¶3, highlighted, copy attached,** (emphasis added).

      (4)     That document is specifically referenced in the Complaint (Document 1, ¶ II(B)(2), Page ID 5), but the first page was omitted from the first attachment. Plaintiff has incorporated the terms of FRCP Rule 10(c) documents that Hubbell has so far failed to acknowledge. Missing from Hubbell's conclusory opinions is any attempt to factually refute that the unprecedented component innovations that initially were to be marketed by Power Electronics, somehow fortuitously landed in Hubbell's lap a few years later.  Hubbell suggests there is <u>no connection to the e-mails; the business plan, or the zip drive</u> that contained industry-exclusive technicalities so complex that they require a ten-page, single-spaced, itemized

portrayal in the Complaint in order to satisfy the "particularity" fraud requirements of FRCP Rule 9 (Complaint, Document 1, Page ID 18 – 27, ¶ II(J)(2)(a) – (p)).

(5)     Hubbell's Memorandum of Law invites the Court to conclude that, despite the demonstrable history of those claimed "technical innovations," for which Mr. Atchison's "Power Electronics" **"venture"** was created, it presently has no duty—or motivation—to factually detail how Hubbell has gotten from "Point A" to "Point B" in now marketing those "innovations" which were the subject of the "Business Plan" **"venture."** If Hubbell already possessed that "innovative" technology before they met Mr. Atchison, why do they not easily address that pivotal, material fact with an (FRE Rule 702 "trustworthy") affidavit to that effect, and supporting documentation?

(6)     Instead, Hubbell has casually offered for the Court's consideration a pleadings attack through a surface-level description of Tennessee law on joint ventures, unjust enrichment, and fraudulent concealment, spiced with its repeated invitations to accept Hubbell's subjective comments about why the precise Complaint details, and supporting documents, "fail to state a claim" under the *Twombly* plausibility standard.

(7)     Defendant effectively filed an FRCP Rule 56 Motion for Summary Judgment, but has labeled the Motion as a Rule 12 Motion to Dismiss. Supplementing the numerous subjective, factual pronouncements by defense counsel, Hubbell has attached to its Motion, with no supporting affidavit, documents that appear to be offered as evidentiary support for the pleadings challenge. Plaintiff's initial response to the Defendant's Motion to Dismiss is that the Motion should be denied because it is a mislabeled Rule 56 Motion that is replete with unsupported facts and opinions.

(8)     Where, in Defendant's Memorandum, is there any explanation of how the

materials appended to the Memorandum may be considered under Rule 12 standards? There is no evidentiary authentication; no date context; and no description as to how the documents relate to any specific document referenced in the Complaint.

> **The Court may also consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein."** *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (citation omitted)." *Tractor Supply Company v. Ace American Insurance Company*, 2022 WL 4823011, at 2 (M.D. Tenn. 2022) (emphasis added).

(9)     Where a Rule 12(b)(6) Motion relies materially on matters outside the pleadings, the motion challenging the pleadings should be converted to a Motion for Summary Judgment under Rule 56, FRCP Rule 12(d).

### III.  DISCUSSION OF THE FRCP RULE 12(b)(6) PLEADING ISSUES:

### A.     The Complaint Adequately Pleads the Existence of a Joint Venture:

(1)     Under Tennessee law, what factual circumstances may give rise to a "joint venture?"  How may such a fact-driven inquiry be resolved as a matter of law? Repeated throughout the Defendant's Memorandum, Hubbell appears to simply make a pronouncement that legally "no joint venture existed," with the invitation that the Court accept that self-serving, fact-driven threshold fact issue as an undisputed fact. Hubbell literally does not brief the issue in an attempt to address the *prima facie* elements that give rise to a joint venture/partnership relationship, both at common law, and pursuant to the *Tennessee Uniform Partnership Act* (T.C.A. § 61-1-101, et seq (TCA § 61-1-104).

(2)     *Wantiez v. Carlson*, 1986 WL 1151 (Tenn. App. 1986), contains a concise and accurate description of how two parties **working in an employer-employee relationship may, by their conduct, evolve into a joint venture,** where the fiduciary relationship is then governed by the rules applicable to every confidential relationship:

"First of all, we feel that we need to resolve the issue of whether a partnership existed between the parties.

The Chancellor stated in his opinion: 'The partnership may be found to exist notwithstanding the lack of explicit expressed agreement. Therefore, where there is a community of interest and contribution of capital by the partners together with co-ownership of the property and sharing of profits and losses, and various things in addition to that, by the evidence that there was a partnership such as full-time participation in the business, the right of the parties to incur obligations and that sort of thing, listening to all of the evidence and considering all of the facts, we come to the conclusion that there was a partnership in this case…'

In coming to this conclusion, we do not have to narrow our search to the employment agreement only. 'The controlling intention is **the legal intention deducible from the acts of the parties.** It is not essential that the parties actually intended to become partners. The existence of a partnership is not a question of the parties' undisclosed intention or even the words they use; nor is it essential that the parties have knowledge of the legal effect of their acts. **It is the intent to do the things which constitute a partnership that usually determines whether or not that relationship exists between the parties**, and, if they intend to do a thing which in law constitutes a partnership, they are partners whether their purpose was to create or to avoid the relationship.'" (citing *Wyatt v. Brown*, 39 Tenn. App. 28, 33, 281 S.W.2d 64, 67 (1955)). *Wantiez*, 1986 WL 1151, 2 - 3.

(3)      The *Wantiez* Court proceeded to emphasize that the employer-employee

relationship between the plaintiff and the defendant in that case did not preclude the progressive

evolution, by the parties' conduct, of what amounted to a joint venture,  ultimately subject to the

broad requirements of the Tennessee Uniform Partnership Act, T.C.A. § 61-1-101, et seq.

"There are two sources of such confidential relationships: (1) 'legal confidential relationships' and (2) 'family and other relationships.'*Matlock*,902 S.W.2d at 385–86.  A 'legal confidential relationship' *303 is 'a fiduciary relationship...or any other relationship where the law prohibits gifts or dealing between the parties.' *Id*.  These '[f]iduciary relationships are confidential per se because of the legal status of the parties.' *Kelley*, 96 S.W.3d at 197. An example of such a relationship includes attorney-client. *Roberts v. Chase*, 25 Tenn.App. 636, 166 S.W.2d 641, 650 (1942). Thus, proof of a fiduciary relationship establishes the existence of a confidential relationship, but does not make  out  a  prima  facie claim  of  undue influence unless the contestant establishes an additional suspicious circumstance. *Kelley*, at 197. 'Family and other relationships' are not confidential per se; therefore, the contestants must prove the elements of domination and control in order to establish the existence of a confidential relationship. *Matlock*, at 385–86. The issue of whether a confidential relationship

arose from a non-fiduciary relationship is an issue of fact. *Id.* at 385. Proof of 'family and other relationships,' alone, provides no support to an undue influence claim. *Kelley*, at 197. However, proof of such relationships coupled with proof of domination and control, does establish the existence of a confidential relationship, but does not make out a prima facie claim of undue influence <u>unless an additional suspicious circumstance exists</u>. *Id.*" *In re Estate of Brevard*, 213 S.W.3d 298, 302 – 303 (Tenn. App. 2006) (emphasis added).

"A joint venture is similar, but not identical, to a partnership, and has been described by our Supreme Court as 'something like a partnership, for a more limited period of time, and a more limited purpose.' *Messer Griesheim Industries v. Cyro Tech of Kingsport, Inc.*, 45 S.W.3d 588, 605 (Tenn. App. 2001), quoting *Fain v. O'Connell*, 909 S.W.2d 790, 792 (Tenn. 1995).

(4)     More specifically,

'A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business venture for joint profit for which purpose they combine their efforts, property, money, skill and knowledge, but without creating a partnership in the legal or technical sense of the term…' (citations omitted). Joint ventures are governed by the same rules of law as those governing partnerships." *Messer Griesheim Industries*, 45 S.W.3d at 605 – 606. Cited from *Via v. Oehlert*, 347 S.W.3d 224, 230 (Tenn. App. 2010).

(5)     With the specific allegations detailed in the Complaint (and see Response, Page 11 below), how does Defendant Hubbell propose for the Court to dispose of those factual allegations as an issue of law? The "opinion" answer to that pivotal, threshold question is concisely recited in the **Defendant's Memorandum of Law**. Concisely,

"**Similarly, <u>the Business Plan,</u> which Plaintiff prepared, lacks a single statement that even suggests a partnership (Document 21, Page 18 of 26, Page ID 157)**" (emphasis added).

(6)     What about the emails (Complaint Exhibit 2, Document 1-2, and quoted above)? Hubbell's subjective opinion invites the Court to simply disallow the tortuously-detailed Complaint allegations, in favor of Defendant's counsel's subjective observation. Where is the affidavit that describes how Hubbell **ever** ultimately dealt with "Power Electronics," as one of its acquired assets from Powerohm in 2015? Where is the affidavit that claims that the digital data

was never received after it was taken by the Hubbell in-person envoy? Or, that, somehow, the current ideations of the technically-complex Brake Power Module components being profitably marketed by Hubbell do not specifically reflect the precise content of the technical details in that Complaint-detailed digital "zip drive?"

(7)     *Wantiez* and *Wyatt* remain valid Tennessee law. The Defendant's subjective observation (Memorandum in Support of Motion to Dismiss, Document 21, Page ID 155 – 159) is that **"Plaintiff's allegations lack the <u>profit-sharing</u> required to plead a partnership and the equal right of control required to plead a joint venture"** (emphasis added).

(8)     That opinion is refuted by the following concise and specific allegations that may not be resolved as an issue of law.  Mr. Atchison concisely alleges: **"…Plaintiff's simple financial arrangement was to be three (3%) percent of the <u>gross</u>, annual global receipts."** (Complaint, Document 1, Page ID 7 ¶ II(B)(5)).

(9)     The cites listed herein (II(B), below, and Response, Page 11) specifically address the Defendant's subjective conclusions. The details of the Complaint contain other facts that support Plaintiff's allegation of a joint venture. Offering another conclusory, subjective observation, Hubbell implies a pleading requirement that does not exist in any cited Tennessee case law. Defendant Hubbell reinforces its "no joint venture" argument by the following odd comment:

> **"A joint venturer would have had input into such a sale, yet the sale proceeded without any input from the Plaintiff."** Defendant's Memorandum, Document 21, Page ID 158.

(10)     How could Mr. Atchison plead in his Complaint that he **participated in the decision-making** regarding the subterfuge of Hubbell's plan to seize the subject matter of the "**venture**," and exploit it for Hubbell's benefit? Is it being implied (in an FRCP Rule 12(b)(6)

context) that Mr. Atchison's Complaint fails on the joint venture issue, because he has failed to allege to the Court that he did not participate in the scheme to victimize himself and route the profits from his personal intellectual properties to his new employer?

(11)     Typically, the courts in this jurisdiction (state and federal) have recognized that the intricate, often-disputed details reflecting the parties' "intent to do the things that constitute a joint venture" are **fact-driven inquiries,** which may not be resolved without a trial.  *Life Care Centers of America, Inc., v. Charles Town Associates Ltd. Partnership*, 79 F.3d 496 (6th Cir. 1996), is an appellate decision that reviews the elements under Tennessee law necessary to sustain an allegation of partnership, in a summary judgment context, commenting on the uniquely **fact-driven** inquiry into the **"motivation"** for one partner's (joint venturer's) gaining of some benefit, at the expense of the other partner:

> "An examination of the Defendants' motion for summary judgment in a light that is most favorable to the opposing party reveals their general denials of Life Care's allegations did not eliminate all of the genuine issues of material facts which relate to the motivations, if any, behind their administrative decision. Therefore, the entry of summary judgment on the tortious interference issue should have been denied and a reversal is warranted." *Id.* at 512 (emphasis added).

**B.     Citations to Complaint Fact Allegations (cited for brevity, due to brief page limits):**

(1)     **Description of the joint venture in the Complaint, referencing (and incorporated by reference) the "Power Electronics" Business Plan** (Complaint, Document 1, Page ID 6 – 7, ¶ II(B)(5)):

> "Powerohm was to provide the financing, business and legal oversight for the expensive manufacturing and distribution of the new devices. Plaintiff was designated as the formal "Registered Agent." He was only generically and vaguely described in the planning discussions as "their" (Powerohm's) "partner" and "manager" for the new joint venture project. In return for his overseeing and managing the entirety of the technical aspects of the BPM projects, as well as hiring, training, supervising, managing personnel, parts purchasing, tech support,

sales etc., Plaintiff's simple financial arrangement was to be three (3%) percent of the <u>gross</u>, annual global receipts."

(2)      **The separate nature of the proposed Brake Power Module joint venture, and Plaintiff's routine employment duties**: See Complaint, Document 1, Page ID 3, ¶ II(B)(5) and (6).

(3)      **Plaintiff's unique, valuable, personally-conceived contribution to the joint venture:** See Complaint, Document 1, Page ID 7, ¶ II(B)(7)

(4)      **The allegations of the joint venture legal separateness; promises of fairness and honesty from Hubbell agents Thexton and Rainville; and Hubbell's promises to keep Plaintiff apprised of the development and fruition of the joint venture efforts; and the promises of mutual financial benefits.** See Complaint, Document 1, Page ID 8, ¶ II(B)(9)

(5)      **Hubbell's educated, informed acquisition of the Power Electronics "venture" with its purchase of "Powerohm;" Hubbell's participation, by Thexton and King, in the joint venture meetings that accompanied the Powerohm buyout by Hubbell; and Hubbell's voicing of support for continuation of the Gallatin-based "Power Electronics" joint venture project**. See Complaint, Document 1, Page ID 9, ¶ II(C)(1)

(6)      **Plaintiff's post-acquisition firing by Hubbell, and the pretended (by conduct and words) abandonment of the BPM joint venture.** See Complaint, Document 1, Page ID 11 – 12.

(7)      **Plaintiff's good employee performance ratings and initial statements of venture continuity.** See Complaint, Document 1, Page ID 11 – 13.

(8)      **Plaintiff's reliance on the words of the identified Hubbell representatives that the joint venture innovations may have been overrated, and that they "…were not**

**immediately, or in the foreseeable future, feasible to develop and market."** See Complaint,

Document 1, Page ID 12, ¶ II(E) and See Complaint, ¶ II(D)(1).

(9)      **Allegations of contrived, falsified criticisms months after the Hubbell**

**acquisition:** See Complaint, Document 1, Page ID 13, ¶ II(F):

> "Plaintiff was initially assured by Mike Crowe (with accolades), and then by Tom
> Yingling, that his previous, basic job with Powerohm would remain secure under
> the new Hubbell management, <u>**who had been fully apprised of the subject,**</u>
> <u>**status, and objectives of the joint venture.**</u>"

(10)     **The innovative complexities of Plaintiff's proprietary Brake Power Module**

**innovations**: Not repeated here for the sake of brevity, Plaintiff's "factual particularity" of the

innovations which he claims were stolen from him by Hubbell, commence (single-spaced) on

<u>**Page 18**</u> of the Complaint, and continue, with precise descriptions, through <u>**Page 27.**</u>

(11)     <u>**Summarized:**</u>  Lazily and confidently, the pivotal, material facts detailed above

are not <u>**directly**</u> addressed in the Defendant's Memorandum of Law. In no present, appropriate

procedural context does Hubbell offer any (*Daubert*-quality) affidavit that describes:

(a)      Hubbell's factual denial that the detailed, cited technical innovations are presently a

source of substantial profit for Hubbell in its internationally-marketed industrial equipment; or,

(b)      That the innovations are not in use (profitably or otherwise) anywhere in Hubbell's

market, confirming that Atchison is simply wrong on that allegation; or,

(c)      That, if (a) and (b) are, in fact correctly claimed, that Hubbell had somehow already

possessed the BPM component innovations <u>before</u> Hubbell procured the technical drawings and

material lists contained on the zip drive, and trustingly surrendered by Plaintiff Atchison to

Hubbell employee/envoy Stuart Xiang on the threshold of Atchison's abrupt, suspicious firing.

Hubbell's implied response to that inquiry is that the Complaint is deficient, and that it doesn't

need to expend any effort to provide competent evidentiary answers to the Court in addressing

those material questions. Hubbell seeks a casual (procedurally-wrong) shortcut in responding to

the important threshold fact questions. Upon the standard set forth above, the Complaint

certainly states claims upon which relief may be granted, if it is determined that the facts, as

alleged by Atchison, are true facts. FRCP Rule 56 exists for this type of case.

        **C.**    **The prima facie elements necessary to adequately plead <u>fraudulent</u>**

**<u>concealment</u>:**

        (1)    <u>The elements of fraudulent concealment</u>:

> "In Tennessee, the 'tort of fraudulent concealment' is committed when a party
> who has a duty to disclose a known fact or condition fails to do so, and another
> party reasonably relies upon the resulting misrepresentation, thereby suffering
> injury.'" *EPAC Techs, Inc.*, *v. Harper Collins Christian Publishing, Inc.*, 810 F.
> App'x. 389, 395 (6th Cir. 2020) (quoting *Shah v. Racetrac Petroleum Company*,
> 338 F.3d 557, 571 (6th Cir. 2003); *Chrisman v. Hill Home Development, Inc.*, 978
> S.W.2d 535, 538 – 539 (Tenn. 1998). There are two lines of Tennessee cases
> regarding a party's duty to disclose information. *Bearden*, 720 F.Supp.2d at 939.
> The first line arose from a Tennessee Supreme Court holding that the duty to
> disclose arises only in three 'distinct' circumstances: (1) 'where there is a
> previous definite fiduciary relation between the parties,' (2) 'where it appears one
> or each of the parties to the contract expressly reposes a trust and confidence in
> the other,' and (3) 'where the contract or transaction is intrinsically fiduciary and
> calls for perfect good faith.' *Id. (*citing *Domestic Sewing Machine Co., v. Jackson*,
> 83 Tenn. 418, 425 (1885). A second line of cases, originating with *Simmons v.*
> *Evans*, 185 Tenn. 282, 206 S.W.2d 295 (1947), '<u>prescribes a broader duty to</u>
> <u>disclose.'</u> *Bearden*, 720 F.Supp.2d at 939. Thereunder, 'contracting parties have a
> duty to disclose material facts affecting the essence of a contract's subject matter.'
> *Id.* (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349 – 350 (Tenn. App. 2009)); see
> also *Garrett v. Mazda Motors of America*, 844 S.W.2d 178, 181 (Tenn. App.
> 1992) ('A seller who induces a purchaser to buy an article of property
> by…concealing a material fact is liable for the damages that are the natural and
> proximate result of the fraud.'). *Brown v. Woodbury Auto Group, LLC*, 591
> F.Supp.3d 282, 295 – 296 (M.D. Tenn. 2022) (emphasis added).

        (2)    Patently, the confidential relationship arising from the superior knowledge and

reposed confidence, as described in the Complaint, is not a "consumer" transaction. But, based

upon the authorities cited, the fact-driven determination of the joint venture relationship <u>creates a</u>

<u>fiduciary duty in Tennessee law</u> (by statute and case law), which compelled the Hubbell

Defendant (after having secured the intellectual property belonging to Plaintiff Atchison) to deal in good faith and to not financially exploit that intellectual property without fair notice and reasonable compensation to Mr. Atchison. **As acknowledged above, Hubbell had <u>no duty</u> to ever pursue the "venture." Hubbell had <u>no duty</u> to retain Plaintiff Atchison in its employment after its Powerohm/Power Electronics acquisition. It had <u>no duty</u> to offer any explanation to Mr. Atchison regarding why, within months of that acquisition, bogus reasons were generated for the withholding of his commissions, and he was abruptly terminated.** But, there indeed existed—with no expiration date—a fiduciary duty to act in good faith, with honest disclosure, when it later financially exploited the subject matter of that "venture" so enthusiastically addressed in Mr. Hinton's email and in Mr. Atchison's subsequent meetings with Hubbell.

> "Under Rule 9(b), a plaintiff must 'allege the time, place, and content of the alleged misrepresentation…; the fraudulent intent of the defendants; and the injury resulting from the fraud (citations omitted). However, as long as a plaintiff pleads 'sufficient detail'—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met. *Brown v. Woodbury Auto Group, LLC*, 591 F.Supp.3d 282 (M.D. Tenn. 2022).
>
> In Tennessee, fraud, intentional misrepresentation, and fraudulent misrepresentation comprise the same tort, which is typically referred to as intentional misrepresentation….To state a claim for intentional misrepresentation, Plaintiff must plausibly allege: (1) defendants made an intentional misrepresentation of a material fact; (2) defendants made the representations 'knowingly' without belief in its truth, or 'recklessly' without regard to whether it was true or false; (3) plaintiff justifiably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact….A future promise can support a claim for intentional misrepresentation—known as 'promissory fraud' if it is made without 'the present intention to carry out the promise.'" *Brown*, 591 F.Supp. 3d at 294. And see, *Dean Witter Reynolds, Inc., v. McCoy*, 853 F. Supp. 1023 (E.D. Tenn. 1994).

(3)     As quoted from the Complaint, and cited above, Plaintiff has alleged in detail the "**uniqueness**" of his intellectual property. Powerohm (Hubbell's predecessor-in-interest, and Plaintiff's initial employer) confirmed in its documents and emails the novel nature of the subject matter of the **"venture,"** which did not previously exist. If it already existed, what was the business purpose for a new "venture"?

(4)     In attempting to reframe the "reliance" discussion, Hubbell's Memorandum (Document 21, Page ID 161) contains the following statement: "**However, Plaintiff never alleges he took or refrained from any act because of Hubbell's allegedly false statements**" (emphasis added).

(5)     That comment is incorrect: In reliance upon Hubbell's expression of the **"venture's"** intended continuity, Plaintiff surrendered the zip drive. He then trustingly and naively walked away from his interest in the valuable **"venture,"** upon a good faith understanding that Hubbell had reevaluated the **"venture"** and it was being put on hold. Then, despite Atchison's consistently high work performance ratings, there arose abruptly-contrived job criticisms and a commission dispute. Complaint, Document 1, Page ID 12 – 15.

(6)     The Complaint facts repeated above in II(B) state the precise opposite, and are presently considered "true." **In multiple contexts, the Complaint repeats that Plaintiff surrendered the zip drive to Hubbell's dispatched envoy, Stuart Xiang, in reliance upon Hubbell's positive words and conduct** indicating that (despite the sale transition) the plan was for the venture efforts to be continued, with the ultimate goal for Atchison being the promise of three percent of the gross profits referable to those innovations.

**D.     The factual nature of fraudulent concealment and the "discovery rule:"**

(1)     Plaintiff agrees that the applicable period of limitations for the claims of fraud, breach of fiduciary duty, and unjust enrichment should be **three years, from discovery.** The predicate to most "discovery rule" cases is an intentional concealment by the opposing party of the cause of action, which is, by its nature, **typically a fact-driven inquiry.** In the present Complaint, Mr. Atchison describes why he would have no way of knowing any of the details of how the (relatively obscure) BPM technical **components** have been taken from the zip drive digital content which he had entrusted to Hubbell's (in-person) envoy, Stuart Xiang, and then subtly manufactured and marketed by Hubbell with enormous resulting financial benefits.

(2)     Specifically, as one example of Hubbell's false expressions to Plaintiff for their waning interest in the BPM **"venture:"**

> **"Plaintiff was advised by Tom Yingling that Plaintiff's subordinates were likely to lose their jobs, as the company's basic functions would be moved by Hubbell to 'Archdale.'" Complaint, Document 1, Page 13, ¶ II(F). "Hubbell manufactured what Plaintiff alleges to be an inexplicable, 'odd controversy' by failing to pay him his regular, routine earned commissions, despite no explanation, factual basis or good faith reason for withholding the commissions, just prior to his termination." Complaint, Document 1, Page ID 13, ¶ II(F).**

(3)     Except for what is claimed in the Complaint, nothing in the present record explains what happened to diminish the previously-persistent enthusiasm for the **"venture."** As noted herein, Hubbell's Memorandum treats the discussion of the documented Power Electronics **"venture"** as though it never existed—no explanation—just entirely ignored. Similar issues appear in *Trahan v. Lazar*, 457 F.Supp.3d 323 (S.D. NY 2020). The claim of theft of intellectual property by the Plaintiff arose in that case from the "breach of fiduciary duties" arising from a partnership. Trahan alleges that he was "pushed out" by other partners who desired to avoid compensating him for his contributed intellectual property. A defense Rule 12(b)(6) Motion promptly followed the filing of the complaint, with claimed Rule 9(b) particularity deficiencies

included in the argument. Unlike the present matter, the *Trahan* plaintiff at no point filed for initial patent protection, deferring only to his argument that his "trade secrets" were personally unique and profitable. Preliminarily, the court concluded that the interaction of the parties in their project resulted in **an actionable fiduciary relationship** built on the special factors of trust and confidence. The court resolved its evaluation of the complex scheme by determining that **the disputed issues of fact preclude a Rule 12(b)(6) dismissal.** *Id*. at 349. And, upon a similar analysis, the *Trahan* plaintiff's unjust enrichment claim was permitted to proceed. *Id.* at 360.

(4)     Because of the inherent nature of fraud, and the perpetrator's goal to conceal the malfeasance, Plaintiff does not know at this point (pre-discovery) precisely **when** the "dormant" BPM business "venture" was revived after Atchison's termination. Atchison cannot know at what level, and at what pace, the obscure but technically significant components were subtly merged into the Hubbell marketing and manufacturing regimen, see Pages 15 and 16 of the Complaint (Document 1, ¶ II(H) and (I) "**Plaintiff's enlightenment").** Plaintiff specifically alleges (based on his lack of business experience, his trust, his good employer evaluations)**: "no initial reason to suspect betrayal, subterfuge, deceit or conversion of his proprietary intellectual property."** Complaint, Document 1, Page ID 15, ¶ II(H)(2).

(5)     The Complaint alleges recent, routine professional projects that permitted Plaintiff awareness that his personal intellectual innovations had not been abandoned at all by Hubbell, but merely deferred for some unknown period of time until Atchison had been removed from any position to identify his promised three-percent profits. The nature of the concealment; the reasonableness of Mr. Atchison's good faith trust; and the details of his inadvertently stumbling upon Hubbell's present technical exploitation of the Atchison zip drive, are all **fact-driven inquiries,** which may not be resolved as issues of law.

(6)     Plaintiff has described the Defendant's fraudulent concealment with a level of particularity that satisfies FRCP Rule 9. The basic details of Plaintiff's belated research of what Hubbell is presently marketing, and how it is being marketed, satisfy the basic pleading requirements of **FRCP Rule 8 for a "short and plain statement showing that the pleader is entitled to relief."**

(7)     The factual nature of fraudulent misrepresentation, and the application of the discovery rule, is outlined in *Craft v. Vanderbilt University*, 18 F.Supp.2d 786 (M.D. Tenn. 1998):

> "Plaintiffs assert that the applicable statutes of limitations have been tolled by the discovery rule and by fraudulent concealment. The issue of whether a statute of limitations has been tolled in this manner **constitutes a genuine issue of material fact**, which renders summary judgment inappropriate. See *Benton v. Snyder*, 825 S.W.2d 409, 415-16 (Tenn. 1992).
>
> The discovery rule provides that a statute of limitations commences to run only when the injury and its negligent cause are discovered, or when through the exercise of reasonable care and diligence they should have been discovered. *Foster v. Harris*, 633 S.W.2d 304 (Tenn. 1982); *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974). The discovery rule tolls the statute of limitations where 'facts about causation [are] in the control of the putative defendant, unavailable to the plaintiff <u>or at least very difficult to obtain</u>.' See *United States v. Kubrick*, 444 U.S. 111, 122 (1979).
>
> It is well-established that **<u>the discovery rule ordinarily raises issues of fact</u>** as to whether a plaintiff should have known of a claim for relief, and whether a plaintiff exercised 'reasonable diligence,' prohibiting resolution of the issue on either a motion to dismiss or motion for summary judgment. See *Foster v. Harris*, 633 S.W.2d at 305; *Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355, 360 (Tenn. App. 1986). The court notes that **<u>given the fiduciary relationship</u> between health care providers and their patients, Plaintiffs' duty of diligence was diminished in this case and Vanderbilt's duty to disclose was heightened**. *Benton v. Snyder*, 825 S.W.2d at 414, (emphasis added).
>
> A reasonable jury could conclude that in the current action Plaintiffs neither knew that they had been exposed to harmful radiation, nor did they suspect or have reason to suspect, prior to 1993, that radiation had caused them any injuries." *Craft v. Vanderbilt University*, 18 F.Supp.2d 786, 796 -797 (M.D. Tenn. 1998) (emphasis added).

(8)     The foregoing *Craft* decision emphasizes that silence, where there is a reasonable, affirmative duty to speak, constitutes fraudulent concealment, particularly where, as here, in the joint venture, a confidential relationship is shown, (and citing *Benton*, 825 S.W.2d at 413 (18 F.Supp. 2d 786, 797)).

(9)     The date on which a cause of action accrues is the date on which the statute of limitations begins to run:

> "In considering a statute of limitations defense, Tennessee courts recognize an obligation to examine three interrelated elements: 'the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines.' *Redwing*, 363 S.W.3d at 456 (Tenn. 2012)….Inquiry notice 'charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed.' *Redwing*, 363 S.W.3d at 459 (quoting *Sherrill v. Souder*, 325 S.W.3d 584, 593, n.7 (Tenn. 2010)). When a plaintiff is aware of information sufficient to put a reasonable person on notice of the need to investigate 'the injury,' the claim accrues and the limitations period begins to run. *Id*." *Hamm v. Wyndham Resort Development Corporation*, 2019 WL 6273247 (M.D. Tenn. 2019).

Significantly:

> "'Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run,' and, '[i]f the defendant meets this requirement[,] then the burden shifts to the plaintiff to establish an exception to the statute of limitations.' *Campbell v. Grand Trunk W.R.R. Co.,* 238 F.3d 772, 775 (6th Cir. 2001); see also *Redwing v. Catholic Bishop for Diocese of Memphis,* 363 S.W.3d 436, 464 (Tenn. 2012)." *Hamm v. Wyndham Resort Development Corporation*, 2019 WL 6273247 (M.D. Tenn. 2019).

(10)     Unlike the plaintiff in the above-referenced *Hamm* ruling, Plaintiff's Complaint emphasizes (as the reason for Plaintiff's admitted lack of earlier investigation):  Defendant's affirmative communication to the Plaintiff that the BPM innovations had been abandoned, a representation which (in the confidential relationship) was trustingly accepted. Only routine work research led to that enlightenment, upon which he promptly acted. That prompt action was

manifested by Plaintiff's ensuing, immediate 2023 patent protection submission (Complaint Exhibit 1).

(11)     Repeatedly appearing in the Defendant's Memorandum (Page ID # 154) are general fact comments inviting the Court to assume that there is some significance (in the present legal issues) to the claim that Powerohm was **"already"** marketing a form of the Brake Power Modules in 2014. Nowhere in the Complaint does the Plaintiff ever contend that Powerohm was not in the broad business of "Brake Power Modules" prior to 2014. It is the <u>projected</u> "**<u>component</u>**" innovations (Complaint, pages 16 and 18, II (I)(1) and II(J)(2)), that are contemplated in the early email communications, confirming that the Plaintiff and Powerohm had identified the uniqueness of Mr. Atchison's BPM innovations (see the attached, highlighted Vance Hinton 2006 "business plan" e-mail). **It contemplated a "venture" clearly outside Mr. Atchison's (salaried plus commission) job with Powerohm**. It contemplated **something beyond the scope of the existing product line** marketed prior to 2005 by Powerohm, including its basic line of power resistors and Brake Power Modules.

(12)     If Powerohm (derivatively, Hubbell) already possessed the BPM "innovations," why, in 2014, specially dispatch Hubbell employee Stuart Xiang to personally travel to and physically secure the digital zip drive and other data from the Kentucky office? That material inconsistency is not addressed in Hubbell's Memorandum.

**E.      <u>Plaintiff's claims of Hubbell's unjust enrichment:</u>**

(1)     In *Freeman Industries, LLC, v. Eastman Chemical Company*, 172 S.W.3d 512 (Tenn. 2005), the Court emphasized the typically factual nature in most unjust enrichment claims (in a summary judgment context):

> "A plaintiff need not be in privity with a defendant to recover under a claim of unjust enrichment. See *Paschall's, Inc.,* 407 S.W.2d at 154…. The underlying

principle of the doctrine of unjust enrichment is that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit. *Paschall's, Inc.,* 407 S.W.2d at 154. In accordance with this underlying principle, we conclude that to recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* from the plaintiff if the defendant's retention of the benefit would be unjust." *Id.*at 525 (emphasis in original).

"An unjust enrichment case **'must be examined in light of its factual situation,** and decided according to the essential elements of unjust enrichment....The Tennessee Supreme Court has noted that the most significant requirement in a claim for unjust enrichment is that the enrichment to the defendant must be unjust. *Cole v. Caruso*, 2018 WL 1391625, at 3 (Tenn. App. 2018).

(2)     Hubbell's description of the *prima facie* requirements for a claim of unjust

enrichment correctly describes the case law on that subject. However, as with other instances in

its Memorandum, Hubbell requests that the Court accept its counsel's subjective, self-serving

pronouncements regarding the sharply-disputed material facts on that subject.  The Complaint

allegations of "unjust enrichment" satisfy the necessary, *prima facie* elements:

"Generally, a plaintiff seeking to establish unjust enrichment under the laws of any of the relevant states must show that: '(1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying (citations omitted).'" *Stanley v. Nissan North America, Inc.,* 719 F.Supp.3d 786, 813 (M.D. Tenn. 2024).

"'The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust.'" *Best Choice Roofing and Home Improvement Company, Inc. v. Best Choice Roofing Savannah, LLC, et al*., 446 F.Supp.3d 258, 282 (M.D. Tenn. 2020) (citing *Freeman Industries, LLC, v. Eastman Chemical Company*, 172 S.W.3d 512 (Tenn. 2005)).

(3)     The fact-driven nature of an unjust enrichment claim is explained in the following

quote:

"'A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss.' *Freeman Industries, LLC,* 172 S.W.3d at 525. '[A] plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust.' At the same time, however,

an indirect benefit that is too attenuated from the plaintiff does not support a claim for unjust enrichment. *Coffey v. Coffey*, 578 S.W.3d 10, 26 (Tenn. App. 2018); *Abriq v. Hall*, 295 F.Supp.3d 874, 882 – 882 (M.D. Tenn. 2018)." *Home Trust Bank v. Craine Thompson and Jones, PC*, 2020 WL 12863034, at 11 (E.D. Tenn. 2020) (emphasis in original).

(4)    *Stanley, et al., v. Nissan North America, Inc.*, 719 F.Supp.3d 786 (M.D. Tenn. 2024) contains a recent "unjust enrichment" discussion, consistent with the above.

(5)    The Complaint details the sequence of events surrounding Hubbell's acquisition of Plaintiff's personal intellectual work product; the abrupt, suspect termination; and the subsequent exploitation of that precisely-detailed "innovative" content. Those demonstrably **"unjust"** alleged facts reasonably suggest a contrivance or scheme intended to eliminate Atchison from the financial picture, while profiting from his intellectual work product. It is not an issue of law.  With sharply-disputed facts shown, the matter should be resolved under TRCP Rule 56 standards, or at trial.

(6)    With its presumed easy access to experts who may provide a "trustworthy," "reliable" evidentiary foundation to its defense conclusions (within the meaning of FRE Rules 702 and 703), Defendant Hubbell should be readily-prepared to show this Court that Mr. Atchison's allegations of unjust enrichment are without factual merit: (1) what we are marketing is not the same thing that was contained on the zip drive; or (2) what we are marketing is the same technically "innovative" material cited by Mr. Atchison, but it is not his personal intellectual property, for whatever factual or legal reason Hubbell may accurately cite.

(7)    Plaintiff's Complaint includes the specific allegation of Hubbell's (not Powerohm's) unjust enrichment through the confidential relationship involving initially the named Powerohm supervisors, and later the **Hubbell** agents (Thexton and Rainville).  Only Hubbell has profited, without compensation to the Plaintiff. (Complaint, Document 1, Page ID 6, ¶ II(B)(3); and Page ID 16, II(I)(3)).

"Hubbell has produced and marketed the Brake Power Modules, **generating many unaccounted millions of dollars annually**. Hubbell, discreetly and privately, replicated Plaintiff's innovative intellectual property without ever seeking patent protection for the concepts and components detailed above in par. II(B), items a-p." (Complaint, Document 1, Page ID 10, ¶ II(C)(2) and (3)), (emphasis added).

### F. The effect of Plaintiff's 2023 Patent "provisional filing" by Plaintiff (see Doc.1, Ex #1):

(1)   Defendant's treatment of the patent issue is not clear. Hubbell appears to suggest that the Plaintiff's filing for the provisional patent (pursuant to 35 U.S.C.A. § 111(b)) is meaningless in evaluating any actionable issues. That cursory conclusion is again offered with no specific statement by Hubbell regarding its defense position on the issue. Hubbell does not seem to contend that the innovations described in the Complaint (and in the patent Exhibit 1) are not "patentable," as defined by 35 U.S.C.A. § 101.

(2)    35 U.S.C.A. § 282 provides for a facial presumption of validity, and establishes the burden of invalidity on the party asserting invalidity. Hubbell has made no claim of "obvious subject matter" in addressing Plaintiff's highly-detailed description of his complex BPM module innovations (see 35 U.S.C.A. § 103). And, 35 U.S.C.A. § 271 permits the filer of a provisional patent to pursue a federal court claim for infringement.

(3)    In responding to the Complaint "provisional patent" claims, Hubbell may easily: (a) offer its FRE 702 "trustworthy" expert to affirm that Mr. Atchison's BPM "venture" innovations **are not presently being marketed for profit by Hubbell**; **or**, (b) if being marketed, that all of the technical minutiae detailed by Atchison (Document 1, Page ID 18 – 27, and attachments); in his zip drive technical drawings; and in the provisional patent application, consists of matters that were already common knowledge within the industry and therefore not subject to patent. The present record contains no denial beyond the cursory, conclusory statement that the provisional filing carries no legal import.

(4)     The patent issue should be considered independent of all of the other issues. Even if Mr. Atchison is without any remedy upon any of the claims set forth in the Complaint, that determination would not preempt the patent issue. If Hubbell or its predecessors or suppliers **have not previously sought patent protection** for the claimed innovations provisionally patented by Mr. Atchison, **then Atchison is first in line, and entitled to the statutory protections described above, 35 USCA § 365.**  The only statute of limitations involved in an infringement claim is the statute that limits the plaintiff's damages to the six-year period preceding the filing of the complaint for enforcement. *Naxon Telesign Corporation v. Bunker Ramo Corporation*, 686 F.2d 1258 (7th Cir. 1982); *Studiengesellschaft Kohle v. Eastman Kodak Company,* 616 F.2d 1315 (5th Cir. 1980).

(5)     Plaintiff's Complaint alleges, for all purposes, that his 2023 provisional patent filing was completed "immediately" upon his discovery that Hubbell had (at some unknown point in the preceding eight years) quietly commenced the merger of Plaintiff's personal intellectual property into its BPM product line. No statute or case law penalizes Mr. Atchison for a delay that was occasioned by his good faith and trust in his former employer/joint venturer.

(6)     Federal courts do not adjudicate "inventorship" with respect to pending patents, as Congress has explicitly vested the United States Patent and Trademark Office with the sole discretion over the granting and issuing of patents. *Camsoft Data Systems, Inc. v. Southern Electronic Supply, Inc.*, 756 F.3d 327 (5th Cir. 2014).

(7)     Conversely, the administrative patent process does not deprive the federal court from adjudicating the common law and other statutory claims arising out of common underlying facts involving a theft of patented intellectual property. Hubbell has offered no suggestion in the present record that it has filed any administrative challenge to Mr. Atchison's pending patent

application. An opposing party may file a declaratory action in federal court to request that the patent be declared invalid, pursuant to 35 U.S.C.A. § 316. *Commil USA, LLC, v. Cisco Systems, Inc.*, 575 U.S. 632 (2015).

(8)     Throughout the process, the burdens of production and proof remain with the patent challenger. *In re Magnum Oil Tools International, Ltd.*, 829 F.3d 1364 (Fed. Cir. 2016). 35 U.S.C.A. § 281 (Remedy for Infringement of Patent). District Courts possess original and exclusive jurisdiction for civil actions pertaining to patents. 28 U.S.C.A. § 1338. In a similar factual setting, where the court considered the opposing arguments of an employer and employee regarding technical concepts patented by the employee, the court emphasized the threshold, **<u>factual nature of the inquiry</u>**. *Koehring Company v. E.D. Etnyre & Company*, 254 F.Supp. 334 (N.D. Ill. 1966).

(9)     If the "zip drive" materials were already patent-protected by Hubbell or its suppliers, or, if the materials are not subject to patent protection for some reason, it would seem an easy and short conclusion to the present litigation for the Defendant's technical experts to provide an FRE Rule 702-compliant "trustworthy" statement to that effect. At this point, Hubbell elects against that reasonable, merits-based resolution.

Respectfully submitted,

**BURGER LAW FIRM**

***/s/Wm Kennerly (Ken) Burger***
Wm Kennerly (Ken) Burger, BPR #3731
*Counsel for Plaintiff*
12 North Public Square
Murfreesboro, TN 37130
T: 615-893-8933; F: 615-893-5333
kenburger@comcast.net

## CERTIFICATE OF SERVICE

I do hereby certify that a true and exact copy of the foregoing has been sent by U.S. Mail, postage prepaid, and by email, to the following on this **10th** day of December, 2024.

Howell O'Rear
Seth M. McInteer
McInteer & O'Rear PLC
2209 Crestmoor Road, Suite 310
Nashville, TN 37215
howell@mcolawfirm.com
seth@mcolawfirm.com

William E. Bradley
Robinson & Cole LLP
1201 Pennsylvania Ave NW
Suite 820
Washington, DC 20004
wbradley@rc.com

*/s/Wm Kennerly (Ken) Burger*
Wm Kennerly (Ken) Burger

cc: Timothy Atchison