IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT FOR TENNESSEE

| | |
|---|---|
| TIMOTHY ALLEN ATCHISON ) | |
| ) | |
| Plaintiff, ) | Civil Action Number 3:24-cv-922 |
| ) | |
| v. ) | Jury Demand |
| ) | |
| ) | Judge Trauger |
| HUBBELL INDUSTRIAL CONTROLS, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY
AND FOR FRCP RULE 37 SANCTIONS**

1. Pursuant to **Local Rule 37.01** and **FRCP Rule 37**, Plaintiff requests the Court's intervention and assistance in an unresolved discovery dispute and impasse. As the attached, supporting documents confirm, the parties have corresponded regarding the dispute **(Exhibit #1).** A discovery telephone conference occurred on Friday, July 11, 2025. The parties' **"Joint Discovery Dispute Statement"** is contemporaneously filed, and was offered for Defendant's input on July 15, 2025. Defendant's comments have been included.

2. While Defendant proposes a telephone discussion, Plaintiff prefers an in-person hearing before the Court to address the dispute. The case is factually complex, and involves voluminous technical documents. As Defendant initially proceeded with unilaterally-noticed discovery depositions, Plaintiff's adequate preparation has been prejudiced by the fact that Defendant's only provided discovery material is cursory and non-substantive **(Exhibit #2, highlighted).** And, it lacks a proper, "knowledgeable" verification **(Exhibit 2A).**

3. Certainly, for both parties, the substantial passage of time since the case events occurred several years ago has added additional preparation challenges, as each side is attempting to truthfully depict and document their respective positions. **<u>Plaintiff has addressed those difficult challenges by:</u>**

    (a)    Granting to the Defendant every extension requested, beginning with their much-delayed Answer;

    (b)    Providing to Defendant an advance review of the Plaintiff's entire discovery package in September 2024, affording Defendant an unlimited, early preview of the hard discovery work ahead;

    (c)    Timely answering the Defendant's interrogatories in careful, descriptive factual detail, **without a single objection**; and

    (d)    Promptly supplementing the responses to Defendant's document production requests, as Plaintiff's further searching has revealed additional relevant documents.

4. **<u>Conversely, Defendant has dealt with those challenges by:</u>**

    (a)    Odd, derisive (and false) personal criticisms;

    (b)    Setting and noticing the initial depositions without date-approval consultation;

    (c)    **<u>Objecting to literally every interrogatory</u>** submitted by Plaintiff (highlighted portions attached as Exhibit 2). For example, Plaintiff's Interrogatory No. 1 asks for any fact basis for the attesting Hubbell witness' knowledge. Hubbell responds by falsely stating: **"See the Verification Page attached to these Responses."** There was none

provided within the deadline. When belatedly submitted by Defendant (15 minutes before the parties' discovery conference), the "verification page" contains (see Plaintiff's memorandum) **no fact description whatsoever of the signatory's adequate knowledge**, and basically states the opposite. That was the purpose of the simple interrogatory. It remains needed for the pending deposition preparation;

(d) Failing (to this date) to provide a proper verification for the (evasive) discovery answers;

(e) Belatedly (after Defendant's deadline) offering a poorly-labeled, disorganized (also un-verified), classic "document dump" of many thousands of pages; and

(f) Declining to cooperate with Plaintiff's early efforts to identify and schedule an FRCP Rule 30 (b) (6) representative discovery deposition.

5. **Plaintiff's specific complaints:**

(a) The Defendants have failed to answer almost every relevant interrogatory submitted by Plaintiff, frivolously objecting to every question (see **Exhibit # 2**, **"Defendants Objections and Responses").** As noted above, Plaintiff answered every question propounded by Defendant, with careful factual detail, and without any objection. Plaintiff had informally provided discovery material to Defendant in September 2024, and it was formally re-submitted following the Case Management Conference in May, 2025.

(b) Defendant has failed (even to the present date) to provide **a competent, sworn verification (see Exhibit 2A)** in support of Hubbell's interrogatory responses;

(c) Defendant responded to specifically-focused, clearly-worded document production requests with many thousands of random pages—a classic, overwhelming and meaningless "document dump;" and

(d) While permitting the request, Defendant continues to voice objection to Plaintiff's participation in noticed discovery depositions by remote video.

6. Plaintiff has provided to the Defendant a legal memorandum (in the joint statement) citing the authorities that support the Plaintiff's concerns, and Defendant's several procedural failures.

7. From the outset of the case, it is documented that Plaintiff has reasonably and cordially agreed to repeated extensions and accommodations requested by the Defendant, (see the discovery-related correspondence, **collective Exhibit #1).** That cooperative spirit has not been fairly reciprocated. The Plaintiff's early request to Defendant's counsel <u>**for both sides**</u> to be given an additional six weeks to comfortably prepare the admittedly-complicated responses was sharply denied (**see attached, Ex #1**), although a two-week extension was agreed. Plaintiff struggled, <u>**but fully complied, without a single objection**</u>.  Now (after expiration of Defendant's deadline**)** Defendant <u>(effectively)</u> states, **"….we're not sure now, but we'll look later when we have time," see Exhibits #2 and 2A, collective answers.**

8**.** The technical complexities and age challenges of the case have been exacerbated by the pettiness of Defendant's counsel:  insisting that the present discovery dilemma is somehow the fault of **Plaintiff's counsel's "unfamiliarity with federal practice"** (<u>now deleted

(b) Defendant has failed (even to the present date) to provide **a competent, sworn verification (see Exhibit 2A)** in support of Hubbell's interrogatory responses;

(c) Defendant responded to specifically-focused, clearly-worded document production requests with many thousands of random pages—a classic, overwhelming and meaningless "document dump;" and

(d) While permitting the request, Defendant continues to voice objection to Plaintiff's participation in noticed discovery depositions by remote video.

6. Plaintiff has provided to the Defendant a legal memorandum (in the joint statement) citing the authorities that support the Plaintiff's concerns, and Defendant's several procedural failures.

7. From the outset of the case, it is documented that Plaintiff has reasonably and cordially agreed to repeated extensions and accommodations requested by the Defendant, (see the discovery-related correspondence, **collective Exhibit #1).** That cooperative spirit has not been fairly reciprocated. The Plaintiff's early request to Defendant's counsel <u>**for both sides**</u> to be given an additional six weeks to comfortably prepare the admittedly-complicated responses was sharply denied (**see attached, Ex #1**), although a two-week extension was agreed. Plaintiff struggled, <u>**but fully complied, without a single objection**</u>. Now (after expiration of Defendant's deadline**)** Defendant <u>(effectively)</u> states, **"….we're not sure now, but we'll look later when we have time," see Exhibits #2 and 2A, collective answers.**

8**.** The technical complexities and age challenges of the case have been exacerbated by the pettiness of Defendant's counsel: insisting that the present discovery dilemma is somehow the fault of **Plaintiff's counsel's "unfamiliarity with federal practice"** (<u>now deleted

(b) Defendant has failed (even to the present date) to provide **a competent, sworn verification (see Exhibit 2A)** in support of Hubbell's interrogatory responses;

(c) Defendant responded to specifically-focused, clearly-worded document production requests with many thousands of random pages—a classic, overwhelming and meaningless "document dump;" and

(d) While permitting the request, Defendant continues to voice objection to Plaintiff's participation in noticed discovery depositions by remote video.

6. Plaintiff has provided to the Defendant a legal memorandum (in the joint statement) citing the authorities that support the Plaintiff's concerns, and Defendant's several procedural failures.

7. From the outset of the case, it is documented that Plaintiff has reasonably and cordially agreed to repeated extensions and accommodations requested by the Defendant, (see the discovery-related correspondence, **collective Exhibit #1).** That cooperative spirit has not been fairly reciprocated. The Plaintiff's early request to Defendant's counsel <u>**for both sides**</u> to be given an additional six weeks to comfortably prepare the admittedly-complicated responses was sharply denied (**see attached, Ex #1**), although a two-week extension was agreed. Plaintiff struggled, <u>**but fully complied, without a single objection**</u>. Now (after expiration of Defendant's deadline**)** Defendant <u>(effectively)</u> states, **"….we're not sure now, but we'll look later when we have time," see Exhibits #2 and 2A, collective answers.**

8**.** The technical complexities and age challenges of the case have been exacerbated by the pettiness of Defendant's counsel: insisting that the present discovery dilemma is somehow the fault of **Plaintiff's counsel's "unfamiliarity with federal practice"** (<u>now deleted

by Defendant from its last draft of the "Joint Discovery Dispute Statement"). That derisive personal statement is a peculiar, inappropriate, factually ill-informed attempt to somehow influence the Court's acceptance of Defendant's multiple defaults in the present record. [1]

9. **Plaintiff's Discussion:**

(a) In the present matter, **"Timothy Atchison"** will prove that the present marketing of Hubbell's Brake Power Module devices contain parts and components that he had personally assigned **(all still bearing the prefix "TA")** in the timeframe of approximately 2006-2008 (as documented in the materials from that timeframe supplied in Mr. Atchison's initial discovery submissions). The need for some general identification of facts supporting Mr. Paul's conclusory "knowledge" of the subject matter remains necessary. Plaintiff must formulate ongoing deposition questioning on subjects that may be governed by the discovery of electronically-stored information, FRCP Rule 26(b)(2)(B), and FRCP Rule 37(e). Mr. Paul's purported verification (exhibit 2A), **and Hubbell's responses to interrogatories 7-9 citing "attorney-client" privilege,** provide no slight hint of any factual basis on the important, above-cited disputed fact. The easy question to Mr. Paul: "Mr. Paul, briefly describe what you have examined; what is beyond your reach; and why?" Mr. Atchison diligently searched and has provided in an organized form that old, electronically-stored documentation in his document production responses. It demonstrably confirms his assignment many years ago of the "TA" prefix component numbers. Hubbell, in response, has provided not a single word of explanatory information in their massive document dump and inadequate interrogatory responses. Instead (see Exhibit 2, responses 7-9), Hubbell states that, on a claim of "privilege" it has no duty to tell the Plaintiff the sources of Mr. Paul's knowledge; how he attempted to gather responsive

---

[1] **Plaintiff's counsel has successfully tried multiple USDC cases: in Nashville; Chattanooga; Atlanta; Los Angeles; New York; Billings, Montana; Minneapolis; and Orlando.**

information; and why (with September 2024 as their starting point) Hubbell cannot presently produce their documentation on that component "TA parts number" issue. Hubbell's counsel repeatedly assert (see Exhibit #2, items 7, 8, 9) that the facts are protected by **"attorney-client privilege,"** which, with no factual detail, is procedurally inadequate. Defendant's experienced federal practice attorneys have chosen to disregard the plainly stated requirements of **FRCP Rule 26(b)(5)(A):**

> "**Claiming Privilege or Protecting Trial-Preparation Materials.**
>
> (A) **Information Withheld.** When a party withholds information otherwise discoverable by claiming that the information is privileged, or subject to protection as trial preparation material**, the party must:**
>
> (i) Expressly make the claim; and
>
> (ii) **Describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.**" (emphasis added)

"Under FRCP Rule 26(b)(5) a party asserting a privilege **must specifically identify** each document or communication and the type of privilege or protection being asserted in a privilege log. To properly demonstrate that a privilege exists, the privilege log **should contain a brief description or summary of the contents of the document,** the date the document was prepared, the person or persons who prepared the document, the person to whom the document was prepared, or for whom the document was prepared, the purpose in preparing the document the privilege or privileges asserted with respect to the document and how each element of the privilege is met as to the document. The **summary should be specific enough** to permit the court or opposing counsel to determine whether the privilege asserted applies to that document." Grenig, *Federal Civil Discovery and Disclosure,* 2015, §7:14, at page 187.

"**The failure to describe the information subject to the claim may result in a waiver of that claim."** Weisserberger's *Federal Civil Procedure Litigation Manual,* Chapter 26, page 254 *("Privilege and Work-Product Claims Set Forth With Specificity").*

(b) In relation to the above quote, Plaintiff's Interrogatory No. 3 (Exhibit 2) directly addresses an important fact dispute in the case: Plaintiff simply requests a description of **<u>any reasons Hubbell may have had for Atchison's firing</u>**, having just dispatched Stuart Xiang to collect all of Plaintiff's personal drawings, diagrams and parts lists pertaining to Brake Power Modules (not denied by Hubbell). **Inconsistently, Hubbell has insisted that the Brake Power Modules now marketed by Hubbell were "already on the market" at that time. Then, why did they need to dispatch a special envoy to take possession of all of Mr Atchison's personal notes, diagrams and parts lists?** Soon thereafter, Hubbell terminated Mr. Atchison, despite his documented consecutive years of good performance ratings and raises! Hubbell's response to that simple, but directly material question? That it is **"irrelevant…vague, ambiguous and unduly burdensome…,"** and, concluding with the vague response that they just don't know. Interrogatory Responses 7, 8 , and 9 decline any factual response, upon the vague conclusion of "attorney client" privilege.

(c) Magistrate Judge Holmes dealt with a similarly evasive interrogatory response in *Hawkins v. Maury County Board of Education*, 2018 WL 11476224 (M.D. Tenn. 2018) by imposing sanctions that included the striking of that Defendant's answer. That employee termination case also involved a faulty verification that provided no details about the individual who was answering on behalf of the defendant. More pertinently:

> "Plaintiff requests in Interrogatory No. 3 that Defendant '[p]rovide all of the reasons and/or information relied upon by the Defendant in the decision to propose the Plaintiff's dismissal in 2015.' **… Defendant's response begins with an objection that 'this interrogatory is overly broad, unduly burdensome**, and not limited in time or date…' Defendant then responds that 'without waiving the foregoing [objection], Plaintiff was terminated for insubordination, unprofessional conduct, neglect of duty, and inefficiency.' …

This answer is only minimally responsive, at best. First, Defendant's objection is without merit. This is an appropriately limited request for information tied to a specific event that occurred in 2015. The request is not overly broad, in either scope of topic or temporal scope. Nor does Defendant give any description of the burden it claims answering this interrogatory would require. That actual answer given by Defendant certainly gives no appearance of being burdensome. In fact, **Defendant's answer is nothing more than conclusory descriptions of termination grounds, without any supporting facts or circumstances**. In other words, without any of the information requested by the interrogatory." *Id.* at 4.

(d) The foregoing citation (matching almost all of Hubbell's interrogatory responses) justified the granting of a judgment by default, since the court had afforded the defendant an earlier opportunity to approach its discovery responsibilities in a more responsible manner. Emphatically, the words employed by Hubbell throughout its discovery responses match closely the defendant's deficient answers in *Hawkins*. What diligent inquiry did the mysterious "Mr. Paul" conduct, or have described to him, regarding the termination of a man whom each deposition witness in the case thus far has conceded to be Powerohm's and Hubbell's **most knowledgeable person in the company** on the design of Brake Power Modules. After gathering all of his home-generated "kitchen table" technical materials, Hubbell decided to fire him, rather than pay him the 3% commission on all BPM sales**, as the predecessor company (Powerohm) had done the previous year before** Hubbell purchased Powerohm. Supposedly, for "business reasons," the "new division" ("Power Electronics') referenced in the early e-mails would exist no more, as the Kentucky BPM facility was closed by Hubbell. Despite the conciseness and relevance of the question, Hubbell effectively states that it has not had time to look, and doesn't particularly care.

(e) Certainly, Plaintiff does not claim that the signature on the verification page for a corporate entity must attest to strict FRE Rule 601 non-hearsay, "personal knowledge" of the facts contained in the responses. That narrow view does not reflect the Plaintiff's position.

Page 8 of 15

Case 3:24-cv-00922     Document 53     Filed 08/01/25     Page 8 of 15 PageID #: 570

However, when asked specifically to set forth <u>at least some minimal factual basis for the corporate signatory's verification</u> of the discovery responses upon which the opposing party must rely, Hubbell's present approach is manipulative and inadequate.

 (f) In response to Plaintiff's Interrogatory No. 1 (asking only the broad basis of the verifying witnesses' "competent knowledge of the matters addressed below," Defendant states that the question is **"irrelevant and not reasonably calculated to lead to admissible evidence."** In their response, Hubbell offers a dismissive and conclusory promise that **"the individual executing the verification page has knowledge or has been informed based on the company's investigation…."** No general descriptive facts are offered to support the broad conclusion, and later (in responses 7, 8, and 9) the flat refusal (on purported "privilege") to offer a single factual statement to assure Plaintiff's counsel that Mr. Paul knows anything whatsoever about the content of Hubbell's interrogatory responses.

 (g) Mr. Paul appears to purposely avoid swearing to any substantive, fact-based responses by stating only that he has received **"information and documents provided to me,"** meaning that (in reviewing interrogatories 7, 8 and 9) Plaintiff is not entitled to any basic supporting **facts**, as Plaintiff attempts to properly prepare for future discovery, including Defendant's FRCP Rule 30(b)(6) corporate representative. Cumulatively, considering the verification page and the interrogatory response content, Hubbell states that Plaintiff simply may not have that information, without explaining why. The second sentence in Defendant's verification is nonsensical. If challenged on his veracity, how could such evasiveness ever be the basis for holding Mr. Paul accountable? Whether Mr. Paul received his vague "information" from office gossip; the Hubbell mail room attendant; or Hubbell's parking lot attendants, remains a mystery.

(h) FRCP Rule 33 permits corporation-directed interrogatories to be answered under oath **"by any officer or agent, who must furnish the information available to the party."** FRCP Rule 33(b)(1)(B). There is nothing objectionable about a knowledgeable and competent "signatory" consulting with authoritative sources and documents available to the corporation, including records maintained within the ordinary course of business.

(i) A party must provide "true, explicit, responsive, complete and candid answers to interrogatories" (as the Plaintiff has done in this matter), and the courts require that a party, "<u>if unable to supply the requested information,… may not simply refuse to answer, but must state under oath that he is unable to provide the information</u> **and 'set forth the efforts he used to obtain** the **information**.'" *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996). The signatory must clarify both what the corporation found, and what it could not find, with at least a minimal explanation as to "why:"

> "[FRCP Rule] 33 expressly permits a representative of a corporate party to verify the corporation's answers without personal knowledge of every response by 'furnishing such information as is available *to the party*.'" *Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1482 (D.C. Cir. 1995) (emphasis in original).

> "Government agencies, like corporations, can appoint an agent to respond to interrogatories. The responding agent does not have to have personal knowledge of the events, but he must verify the answers he provides on behalf of his employer…. In completing this task, the agent must respond to the extent that such information is reasonably obtainable and within the possession, custody and control of the agency." *Gingerich v. City of Elkhart Probation Department*, 273 F.R.D. 532, 541 (N.D. Ind. 2011) (citing *Tyler v. Suffolk County*, 256 F.R.D. 34, 38 (D. Mass. 2009) (finding that officers sued in their official capacity had to respond to discovery requests with all the obtainable information in their possession, custody or control, including records maintained by the prison, and not just rely upon their personal knowledge). "Although lack of knowledge is a permissible response, Elkhart has not clearly made this assertion, nor has it stated that the information is not within its possession, custody or control." *Id.* at 541 – 542.

> "…CoreCivic has not actually demonstrated that complying with the requests would be unduly burdensome or that the information sought is not otherwise discoverable under the Federal Rules….CoreCivic must therefore supplement its responses to Interrogatories Nos. 1-5. **CoreCivic <u>must identify</u>, to the best of is ability, the documents and communications that it relied upon in making the statements at issue, and it must do so as specifically as possible**." *Grae. CoreCivic Corporation*, 2020 WL 6750806, at 5 (M.D. Tenn. 2020) (emphasis added).

> "Under [FRCP Rule] 37(a)(4), 'an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond." *Lewton v. Divingnzzo*, 2010 WL 1630719, at 3 (D. Neb. 2010).

(j) More directly, *Jiminez-Carillo v. Autopart International, Inc.*, 285 F.R.D. 668 (S.D. Fla. 2012), clarifies that the representative must show a reasonable basis for signing the responses, and for thereby stating on behalf of the corporation that the responses are accurate:

> "Of course, the representative **<u>must have a basis for signing the responses</u>** and for thereby stating on behalf of the corporation that the responses are accurate. [citations omitted]. The representative may accomplish this through whatever internal process the corporation has chosen, including discussions with counsel." *Id.* at 670 (citing *Shepherd*, 62 F.3d at 1482) (emphasis added).

(k) In order for the Plaintiff to adequately question three discovery witnesses offered so far by Hubbell, some understanding of Mr. Paul's investigation, and the basis for his sworn verification, would have minimized the prejudice to Plaintiff. More immediately, Plaintiff cannot adequately depose Hubbell's pending FRCP Rule 30(b)(6) witness (if Hubbell ever chooses to identify that witness). It may be reasonably assumed that any such designated "knowledgeable" representative has interacted with "Stephen Paul," prior to Mr. Paul's July 10, 2025, sworn oath claiming that he has looked into the matters specified, and that the answers are reasonably believed to be true and complete.

(l) 4A *Moore's Federal Practice*, § 33.07, at 33 – 46, describes the appropriate response from an answering officer or agent, with the submitted answers **addressing "the**

**composite knowledge of the party—whether or not that officer or agent has personal knowledge of the facts."**

> "It is clear, however, that 'whoever answers the interrogatories, the answers must include whatever information is available to the party.'" *Law v. National Collegiate Athletic Association*, 167 F.R.D. 464, 476 (D. Kan. 1996) (citing 4A *Moore's Federal Practice*, ¶ 33.07 at 33 – 50.

(m) Supported by a verification that contains no (even general) fact description of any materials reviewed; persons interviewed; or other "knowledgeable" or "authoritative" factual backup, Hubbell has elected to tell the Plaintiff in the present matter absolutely nothing about: 1) who Mr. Paul is;

2) his routine duties for the corporation; 3) Mr. Paul's <u>efforts to investigate the Plaintiff's claims (self-servingly labeled as "privileged," without facts)</u> ; or, 4) even a cursory description of the search of Hubbell's records and documents (those presently maintained by Hubbell, and the ones they procured from Powerohm in 2015—also "privileged"). Based on the present wording of Mr. Paul's affidavit, it could be fairly assumed that he commenced his position at Hubbell only last week; that he has personally conducted no inquiry or investigation to answer the interrogatories, and that someone (perhaps a Hubbell receptionist or summer intern) asked him to sign for Hubbell.

10. **<u>Plaintiff's concluding comments:</u>**

(a) There is a public policy consideration to be weighed. This seemingly-typical encountered large corporation discovery strategy is not fair. As Judge Holmes describes, neither the opposing party, nor the Court, should be required to painfully struggle and wade through answers from a party who has just chosen to avoid providing a reasonable description of what they have done to investigate, and why they cannot answer. Defendant's counsel seem to not be bothered by that protracted, unnecessary torture. Unfairly, Mr. Atchison fully answered all

**fifteen (15)** of Hubbell's interrogatories, without any objections, **requiring a total of 31 (some single-spaced) pages** to exhaustively describe his details of the relevant events. Hubbell inexplicably responds that it does not appreciate Mr. Atchison's minute, voluminous detail. If his credibility on the minute factual detail is suspect, the voluminous facts are there to be challanged—no avoidance whatsoever! Hubbell may explore that claim it in his deposition, and thereafter in the anticipated summary judgment motion where Mr. Atchison continues to bear the ultimate burden of proving his case with credible testimony and records. Plaintiff comfortably invites a "side-by-side" comparison of his precisely-detailed interrogatory responses, and Hubbell's repeated, bad-faith avoidance of simple, direct questions that just require some effort and research.

(b)  Hubbell, like the *Hawkins v. Maury County* defendant addressed above, answered almost nothing. Unnecessarily, the Plaintiff and the Court are left with the headache of slogging through the challenges Hubbell's discovery-avoidance model. With unlimited financial resources to pursue this unfair game, Hubbell, and those similarly inclined, should be dissuaded as a matter of Court policy from its transparent avoidance and delay strategy, as reflected in Exhibit #2. Hubbell should be afforded 30 days to provide reasonable fact-based responses, similar to Mr. Atchison's. If they fail, their Answer should be stricken, with the jury determining only damages, pursuant to FRCP Rules 37 and 55.

11. **The relief requested:**

    (a)  An indefinite stay of any further discovery (three depositions have been completed, causing Plaintiff real preparation prejudice), until properly <u>attested</u> and <u>meaningful</u> fact answers are provided by a FRCP Rule 33-compliant, "knowledgeable" Hubbell representative;

(b) Entry of an Order compelling Hubbell to provide a "knowledgeable representative" (as briefed) within 30 days of the Court's order, and a coherent itemization of documents (that can be identified and discussed by its representative) within 30 days thereafter;

(c) An assessment of fees, or in the alternative, sanctions that would include the striking of the Defendant's Answer, and the granting of a default, in the event Hubbell continues to fail to provide (at this late stage in the discovery calendar) a "knowledgeable representative" upon which Plaintiff may rely as further depositions proceed.

Respectfully submitted,

**BURGER LAW FIRM**
***/s/Wm Kennerly (Ken) Burger***
Wm Kennerly (Ken) Burger, BPR #3731
*Attorney for Plaintiff*
12 North Public Square
Murfreesboro, TN 37130
T: 615-893-8933; F: 615-893-5333
kenburger@comcast.net

### **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was served via email on the 1st day of August, 2025.

**McINTEER & O'REAR PLC**
Howell O'Rear
Seth M. McInteer
*Attorneys for Defendant*
2209 Crestmoor Road, Suite 310
Nashville, TN 37215
T: 615-724-6207; F: 615-523-1311
howell@mcolawfirm.com
seth@mcolawfirm.com

**ROBINSON & COLE LLP**
William E. Bradley *(pro hac vice)*
Kyle G. Hepner *(pro hac vice)*
1201 Pennsylvania Ave NW, Suite 820
Washington, DC 20004
T: 771-213-5602
wbradley@rc.com
khepner@rc.com

***/s/Wm Kennerly (Ken) Burger***