# RE: Atchison v. Hubbell

To BURGER LAW FIRM <kenburger@comcast.net>  Copy Hepner, Kyle G. <khepner@rc.com> •
seth@mcolawfirm.com <seth@mcolawfirm.com> • howell@mcolawfirm.com <howell@mcolawfirm.com>

Ken,

We worked out an aggressive discovery schedule with the Judge days ago and now you are seeking a 6-week extension of time.  We only served 12 interrogatories and 18 document requests directed to the documents and statements raised in the Complaint.  We assumed that the Plaintiff gathered all these materials in advance of filing the Complaint, particularly in view of your motion to start discovery before the 16(b) case management conference last year.

The close of discovery is set for October 15 so a 6-week extension is unreasonable.  We are willing to accommodate a 2-week extension and will request a reciprocal extension for Hubbell's responses.  We are working on a deposition schedule for late June with the Mr. Crowe and Mr. Hinton and need clarity on Mr. Atchison's claims as well as his supporting documents in advance of those depositions.

We will also need adequate time after those depositions, as well as Mr. Atchison's deposition, for follow-up discovery.  The present schedule does not lend itself to extensions of time that more than double the response time for discovery requests provided for by the Federal Rules.

In sum, we will agree to a 2-week extension of time as a courtesy and in cooperation with you.

Best regards,
Bill

**William E. Bradley**
Robinson & Cole LLP
1201 Pennsylvania Avenue NW
Suite 820
Washington, DC 20004
Direct 771.213.5602 | wbradley@rc.com
Bio | V-Card

## Robinson+Cole

Boston | Hartford | New York | Washington, DC | Providence | Miami | Austin
Stamford | Wilmington | Philadelphia | Los Angeles | Albany | www.rc.com

**From:** BURGER LAW FIRM <kenburger@comcast.net>
**Sent:** Friday, May 9, 2025 2:12 PM
**To:** Bradley, William E. <WBradley@rc.com>
**Cc:** Hepner, Kyle G. <khepner@rc.com>; seth@mcolawfirm.com; howell@mcolawfirm.com
**Subject:** Atchison v. Hubbell

EXHIBIT #1

Hello Bill--I'll be submitting today or Monday Mr. Atchison's initial disclosures, along with an update of the first discovery drafts that I shared with you in September. In view of the volume involved, may we agree that we will each have through July 15 for the responses?

Ken

Wm Kennerly Burger
Burger Law Firm
12 Public Square North
Murfreesboro, TN 37130
(615) 893-8933
(615) 893-5333 facsimile
kenburger@comcast.net

This transmittal may be a confidential R+C attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution, or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-275-8200, or e-mail at it-admin@rc.com, and immediately delete this message and all its attachments.

# BURGER LAW FIRM

### AN ASSOCIATION OF ATTORNEYS

Wm. Kennerly Burger
Claire Burger Perkins
Christian K. Burger

**12 PUBLIC SQUARE NORTH**
**MURFREESBORO, TENNESSEE 37130**

kenburger@comcast.net
cburgerperkins@gmail.com
christiankburger@gmail.com

**PHONE: 615.893.8933**

**FACSIMILE: 615.893.5333**

May 19, 2025

McINTEER & O'REAR PLC
**Howell O'Rear, BPR # 26509**
**Seth M. McInteer, BPR # 26471**
*Attorneys for Defendant*
**2209 Crestmoor Road, Suite 310**
**Nashville, TN 37215**
howell@mcolawfirm.com
seth@mcolawfirm.com

ROBINSON & COLE LLP
**William E. Bradley** *(pro hac vice)*
**Kyle G. Hepner** *(pro hac vice)*
**1201 Pennsylvania Ave NW, Suite 820**
**Washington, DC 20004**
wbradley@rc.com

*Re: Timothy Allen Atchison v. Hubbell Industrial Controls, Inc.; USDC, Middle District for Tennessee; Civil Action No.: 3:24-cv-922*

Gentlemen:

Pursuant to FRCP Rule 30(a)(6), I request the opportunity to complete the deposition of the Defendant's representative witness. The matters proposed for examination will specifically track the served interrogatories. I submit for your consideration the following potential dates, all of which follow your June 28, 2025 discovery deadline: July 24; July 29; or August 5, 2025. I have no objection to the completion of the witness' deposition by remote video (Zoom).

Respectfully,

**/s/ Wm Kennerly (Ken) Burger**
BURGER LAW FIRM
Wm Kennerly (Ken) Burger
12 North Public Square
Murfreesboro, TN 37130
615-893-8933; 615-893-5333 (facsimile)
kenburger@comcast.net

cc: Tim Atchison

**Bradley, William E. <wbradley@rc.com>**                    6/10/2025 9:32 AM

# RE: Atchison v. Hubbell - Depositions

To BURGER LAW FIRM <kenburger@comcast.net>   Copy howell@mcolawfirm.com <howell@mcolawfirm.com> •
seth@mcolawfirm.com <seth@mcolawfirm.com> • Hepner, Kyle G. <khepner@rc.com> •
Kim, Doh Y. <dkim@rc.com>

Ken,

We hand served you with the subpoenas for the Crowe and Hinton depositions after the May 5, 2025, case
management conference and I specifically asked you at that time to let us know if those dates did not work.
That was over a month ago and you did not object to those dates nor request we consider remote access.

With respect to Mr. Hinton informing us of his availability on June 24 and our service upon you an updated
subpoena for New Braunfels, TX on June 24, 2025; please note we served the updated subpoena on you at least
two days before attempted service on Mr. Hinton as prescribed by the Local Rules so you could inform us of any
conflicts before we effected service.  Since we did not hear from you, we attended to the service of Mr. Hinton
yesterday.

Federal Rule of Civil Procedure 30(b)(4) only provides for remote depositions by stipulation or Court order.  We
are not stipulating to remote depositions as a matter of course for this matter.  However, we do not want the
two scheduled depositions to be delayed so we will provide you with the information for the court reporter so
you can arrange to attend by video.

With respect to the 30(b)(6) deposition of Hubbell, we reiterate that we need the topics for examination before
we can identify and witnesses and provide you with their availability.

Regards,
Bill

**William E. Bradley**
Robinson & Cole LLP
1201 Pennsylvania Avenue NW
Suite 820
Washington, DC 20004
Direct 771.213.5602 | wbradley@rc.com
Bio | V-Card

**Robinson+Cole**

Boston  |  Hartford  |  New York  |  Washington, DC  |  Providence  |  Miami  |  Austin
Stamford  |  Wilmington  |  Philadelphia  |  Los Angeles  |  Albany  |  www.rc.com

**From:** BURGER LAW FIRM <kenburger@comcast.net>
**Sent:** Monday, June 9, 2025 3:34 PM
**To:** Bradley, William E. <WBradley@rc.com>
**Cc:** howell@mcolawfirm.com; seth@mcolawfirm.com
**Subject:** Atchison v. Hubbell - Depositions

Case 3:24-cv-00922      Document 53-1      Filed 08/01/25      Page 5 of 17 PageID #: 582

# BURGER LAW FIRM

AN ASSOCIATION OF ATTORNEYS
**12 PUBLIC SQUARE NORTH**
**MURFREESBORO, TENNESSEE 37130**

Wm. Kennerly Burger
Claire Burger Perkins
Christian K. Burger

kenburger@comcast.net
cburgerperkins@gmail.com
christiankburger@gmail.com

**PHONE: 615.893.8933**
**FACSIMILE: 615.893.5333**

July 8, 2025

McINTEER & O'REAR PLC
Howell O'Rear
Seth M. McInteer
2209 Crestmoor Road, Suite 310
Nashville, TN 37215
howell@mcolawfirm.com
seth@mcolawfirm.com

ROBINSON & COLE LLP
William E. Bradley *(pro hac vice)*
Kyle G. Hepner *(pro hac vice)*
1201 Pennsylvania Ave NW, Suite 820
Washington, DC 20004
wbradley@rc.com
khepner@rc.com

> ### *Re:* *Timothy Allen Atchison v. Hubbell Industrial Controls, Inc.;* **USDC, Middle District for Tennessee; Civil Action No.: 3:24-cv-922**
>
> **Plaintiff's Discovery Default Notice to Defendant**
>
> **LR 37.01 Good Faith Attempt at Resolution**

Gentlemen:

Hubbell's discovery responses were due not later than Saturday, June 28, 2025. As of this date, I have received only unexecuted, unsworn copies. Please confirm that the supporting sworn declaration will be forthcoming.

More substantively, I am shocked at the lack of effort reflected in the materials that I have received. In contrast to Mr. Atchison's exhaustive, good faith discovery responses, Hubbell has objected to, and evaded, every interrogatory, document production request, and request for admission, with one exception. Mr. Atchison submitted no objection to <u>any</u> interrogatory or document production request, and fully answered each question, to the best of his present ability. The facts are the facts, despite Mr. Hepner's plea for "more." I recognize that the case facts are

both old and complex. The development of information is incremental, but Hubbell's responses do not reflect any good faith efforts to answer simple questions.

This notice is submitted in furtherance of the requirements of Local Rule 37.01. I request an immediate good faith conference in an effort to resolve these issues, prior to submitting the matter to the Court for resolution of the dispute, and implementation of any appropriate sanctions. Based on what I have received so far, I want to be clear in emphasizing that I will be requesting entry of a default, and the striking of the Defendant's pleadings, pursuant to FRCP Rule 37.

Alternatively, if Hubbell will provide a knowledgeable Rule 30(b)(6) representative as soon as possible, I am willing to defer (not withdraw) my discovery concerns. If Hubbell's written discovery responses are legitimate, good faith responses, and your corporate representative is willing to be locked in to those binding answers, I will certainly be prepared to proceed to the dispositive motions and trial of the case with that procedural status. If Hubbell intends to resist the prompt presentation of a representative witness, I will want to proceed with a discovery conference immediately, and will thereafter file the appropriate motions with the Court.

With regard to Mr. Hepner's request for a conference to discuss Mr. Atchison's discovery answers, I am available on the following dates and times: Friday, July 11 (10am Central); Monday, July 14 (any time); Friday, July 18 (any time); or Monday, July 21 (any time). Mr. Atchison submitted 30 pages of precise factual detail in addressing 12 interrogatories, without a single objection. He has concisely described all information that is available to him at this time. The voluminous technical materials provided via Dropbox are described in the interrogatory responses. As I indicated in my last correspondence, he is continuing to search his old files, as time permits, and we will supplement as the rules require.

Mr. Atchison's 20 document production requests produced 20 objections, with no relevant documents provided. Plaintiff's 15 concise, understandable interrogatories produced 15 evasive objections, with no substantive material described in any answer. Similarly, each request for admission produced (with one exception) general, impermissible denials, that will soon be the basis of a motion to deem admitted. Summarized, Mr. Atchison has diligently answered every interrogatory submitted to him, and has provided substantial documentation in support of those answers. Hubbell, quite literally, has provided nothing, which may explain the absence (two weeks late) of sworn support by any Hubbell representative. Please advise me of your plans to correct these issues immediately, and your availability to discuss my concerns. Otherwise, I will proceed with a motion for sanctions.

Respectfully,

*/s/ Wm Kennerly (Ken) Burger*
BURGER LAW FIRM
Wm Kennerly (Ken) Burger
12 North Public Square
Murfreesboro, TN 37130
615-893-8933; 615-893-5333 (facsimile)
kenburger@comcast.net

cc: Tim Atchison

# RE: Atchison v. Hubbell - Plaintiff's Discovery Default Notice to Defendant

To BURGER LAW FIRM <kenburger@comcast.net> • howell@mcolawfirm.com <howell@mcolawfirm.com> • seth@mcolawfirm.com <seth@mcolawfirm.com> • Bradley, William E. <wbradley@rc.com>   Copy Kim, Doh Y. <dkim@rc.com>

Dear Mr. Burger,

I am writing to address your letter of yesterday, July 8th. Given the nature of the case and the evidence presented so far, we are extremely surprised by your allegations.

Regarding the signed declaration, the declarant for the interrogatory responses has been out of the country. We will obtain the signed statement and submit to you when possible.

Hubbell has, and continues to, put forth great efforts and time to search and collect the documents you requested. As you noted, the issues raised by your client occurred a long time ago, which has made it difficult to collect and review these documents. We have also been working to compile these documents to provide them to you in a manner efficient for both parties. We are finishing these efforts now and will be able to make the documents we have available to you today. Hubbell's document collection and production remains ongoing, and we will produce additional documents when and if they become available.

Hubbell's objections are not uncommon and are reasonable given the information requested. Hubbell has made extensive efforts to investigate the facts surrounding the issues that occurred over ten years ago and provide what information that is available. Given the fact that the deposition testimony of two independent witnesses has corroborated Hubbell's findings, and no evidence to the contrary has been submitted by your client, we believe it is clear that Hubbell is not being evasive or nonresponsive. However, we are willing to discuss any specific issues you may have and try to address them as needed.

Regarding the 30(b)(6) deposition, Hubbell plans to prepare and provide one or more individuals to testify on behalf of the company as required by the rules. As we have previously stated, we look forward to receiving your 30(b)(6) deposition notice including the list of topics for examination so that the company can identify the proper individuals to serve as its 30(b)(6) deponents.

I am available to discuss these issues and Plaintiff's discovery responses on Friday, July 11th at 10am Central.

Best regards,

**Kyle G. Hepner**
Robinson & Cole LLP
1201 Pennsylvania Avenue NW
Suite 820
Washington, DC 20004

# RE: Atchison v. Hubbell - Plaintiff's Discovery Default Notice to Defendant

To Hepner, Kyle G. <khepner@rc.com> • howell@mcolawfirm.com <howell@mcolawfirm.com> •
seth@mcolawfirm.com <seth@mcolawfirm.com> • Bradley, William E. <wbradley@rc.com>   Copy
Kim, Doh Y. <dkim@rc.com>   Blind copy TIMOTHY A ATCHISON <tatchison123@bellsouth.net>

Mr. Hepner:   thank you for the prompt response.  I will call at 10:00 a.m.
Central Time on Friday to discuss the points I have identified.

Certainly, general objections are typical and appropriate.  I use them
sparingly, particularly when I have specific, detailed, credible facts to answer
my opponent's questions.  In context, Hubbell's answers are comical.  In
contrast to Mr. Atchison's painfully-detailed thirty pages of his "truth," I can
identify no single statement of <u>substantive fact</u> in the Hubbell (supposedly
**fact**-focused) conclusory responses.  Literally, not one! And, as depositions
proceed in the immediate weeks ahead, I am prejudiced by the lack of a
sworn answers and ample preparation time.  Procedurally, no effective
response has been submitted. What is the name of that unidentified "out of
country" Hubbell prospective sworn signatory who possesses FRE Rule 601
competence?  The present Hubbell tactic is interesting.

After I had promptly agreed to your early, <u>indefinite</u> answer extension
requested by Hubbell (and I provided your office an early, advantageous head
start for your preview of my discovery, months ago) I suggested to Mr.
Bradley that--with plenty of preparation time for this complex case---we
should "bump off" our respective response deadlines for 60-90 days.  I was
told absolutely not.  Now, I have fully responded, and Hubbell has ignored its
own unnecessary, rigid, self-imposed deadline. Okay for Hubbell, not for
Atchison?

 Crowe and Hinton are not "disinterested" credible witnesses, as a casual
reading of the Powerohm and Hubbell indemnification duty confirms. There
are indeed several "totally disinterested" witnesses who solidly support Mr.
Atchison's claims. I need fact-based discovery responses in order to
meaningfully interview the witnesses I am contacting, or to go forward with

more depositions. Unless ordered by the Court, I do not plan to go forward with further noticed depositions on this uneven playing field.

We need to find a way to settle this case.

Ken

Wm Kennerly Burger
Burger Law Firm
12 Public Square North
Murfreesboro, TN 37130
(615) 893-8933
(615) 893-5333 facsimile
kenburger@comcast.net

On 07/09/2025 11:43 AM CDT Hepner, Kyle G. <khepner@rc.com> wrote:

Dear Mr. Burger,

I am writing to address your letter of yesterday, July 8th. Given the nature of the case and the evidence presented so far, we are extremely surprised by your allegations.

Regarding the signed declaration, the declarant for the interrogatory responses has been out of the country. We will obtain the signed statement and submit to you when possible.

Hubbell has, and continues to, put forth great efforts and time to search and collect the documents you requested. As you noted, the issues raised by your client occurred a long time ago, which has made it difficult to collect and review these documents. We have also been working to compile these documents to provide them to you in a manner efficient for both parties. We are finishing these efforts now and will be able to make the documents we have available to you today. Hubbell's document collection and production remains ongoing, and we will produce additional documents when and if they become available.

Hubbell's objections are not uncommon and are reasonable given the information requested. Hubbell has made extensive efforts to investigate the facts surrounding the issues that occurred over ten years ago and provide what information that is available. Given the fact that the deposition testimony of two independent witnesses has corroborated Hubbell's findings, and no evidence to the contrary has been submitted by your client, we believe it is clear that Hubbell is not being evasive or nonresponsive. However, we are willing to discuss any specific issues you may have and try to address them as needed.

Regarding the 30(b)(6) deposition, Hubbell plans to prepare and provide one or more individuals to testify on behalf of the company as required by the rules. As we have previously stated, we look forward to receiving your 30(b)(6) deposition notice including the list of topics for examination so that the company can identify the proper individuals to serve as its 30(b)(6) deponents.

I am available to discuss these issues and Plaintiff's discovery responses on Friday, July 11th at 10am Central.

Best regards,

# BURGER LAW FIRM

### AN ASSOCIATION OF ATTORNEYS
**12 PUBLIC SQUARE NORTH**
**MURFREESBORO, TENNESSEE 37130**

Wm. Kennerly Burger
Claire Burger Perkins
Christian K. Burger

kenburger@comcast.net
cburgerperkins@gmail.com
christiankburger@gmail.com

**PHONE: 615.893.8933**

**FACSIMILE: 615.893.5333**

July 15, 2025

Kyle Hepner
khepner@rc.com

> **Re:** *Timothy Allen Atchison v. Hubbell Industrial Controls, Inc.;* USDC, Middle
> District for Tennessee; Civil Action No.: 3:24-cv-922

Dear Mr. Hepner:

Thank you for your patience in our discovery conversation last Friday. Although we resolved a couple of minor points, it appears that we have very different views regarding the status of the pending discovery. The purpose of this correspondence is to submit for your review the mandatory, pre-hearing proposed "Joint Statement" that outlines the unresolved discovery issues from our differing perspectives.

I am attaching for your review my observations, and request that, **within the next five days,** you insert your client's perspective, so that we may promptly proceed with submitting these issues for the Court's resolution. As I emphasized Friday, it is my view that, well beyond its deadline, Hubbell has filed no discovery responses. I do not intend to be acrimonious. But, I must emphasize that, months ago, I shared with your office our entire discovery package, so that Hubbell would have the opportunity to begin work on what I acknowledge to be a challenging discovery response, permitting ample time to assemble the information. More importantly, Hubbell has had months to identify a representative who has knowledge of the questions propounded.

My reading of the patently-inadequate "verification" that I received 15 minutes before our conference is that the attesting corporate representative is effectively saying: "**I've looked at some unidentified documents that were provided to me by some unidentified source, and my answers may or may not be correct.**" I don't think that is an exaggerated characterization of the net effect of the unusual "verification" that I have been asked to accept on behalf of Mr. Atchison. In my attempts to protect Mr. Atchison's interests in this difficult matter, I cannot accept such a representation.

You have asked me for "authorities" to support my insistence that the Hubbell agent must at least minimally affirm that the documents relied upon were maintained within the ordinary

course of business, and that the affiant's regular duties involve his knowledge of that document credibility (FRE Rule 803(6)). While the rules are plain in their requirements, I submit in my initial draft of the Joint Statement some additional authorities which elaborate on those fundamental evidentiary propositions.

Equally problematic, I belatedly received a massive "document dump" early last week, which contains many thousands of no-context, disorganized, unexplained records, absolutely none of which are directly responsive to the simple document requests that were specified in our discovery requests. When you have the opportunity to depose Mr. Atchison, you will see that he is able to identify and discuss **every single document in the massive document production that we timely submitted** by Dropbox. He can discuss in detail the documents that both directly and indirectly support his claims against Hubbell. Based on what I have seen, it appears likely that Mr. "Stephen Paul" will not be able to meet that challenge when and if I question him about the thousands of pages of random, unexplained technical data.

Further, I am enclosing our FRCP Rule 30(b)(6) notice, requesting that Hubbell produce a witness (or witnesses) who can provide credible evidence regarding the case issues. I certainly do not insist that your corporate representative may not rely on one or more of the technical hearsay exceptions in formulating their answers on behalf of Hubbell. But, if Mr. Paul's "maybe so/maybe not" verification is an indication of Hubbell's ability to answer these simple, basic questions, we have some challenging and extensive discovery motions ahead of us that I would certainly prefer to avoid.

For example, one of the few facts directly admitted in your responses is that Stuart Xiang, on behalf of Hubbell, did indeed specifically travel to meet with Mr. Atchison to ensure that all of Mr. Atchison's personal technical data had been collected by Hubbell, just months before the inexplicable abandonment of the "Power Electronics" project, and Mr. Atchison's termination. If those records were gathered and collated, as admitted, where are they now? If it was technical material that was "already on the market," why was that special, "in-person" trip necessary? Why were those important technical drawings and parts lists not already in "Powerohm's" comprehensive records for Hubbell's use? I asked those simple questions, with supporting documents, and received absolutely no answer. That is one salient example on a long list.

I am confirming that, in our Friday telephone conference, I affirmed my position that our interrogatory responses are adequate, based on presently-available information. Admittedly, the fact that Mr. Atchison has only belatedly learned of this cause of action increases the preparation difficulty for both sides. Beginning with his first contact with my office, I have repeatedly reminded Mr. Atchison of his duty to "continue to search" all of his old records. He has continued to do so, and continues to find possibly-relevant information that is buried among other, irrelevant information. You have requested, and I have agreed to supply, a more precise date involving Mr. Atchison's contact from Mr. Huntington, which prompted the threshold research on the technically-related issues. That led to Mr. Atchison's surprised discovery that his Brake Power Modules (as per the Stuart Xiang collection) and the related parts lists are presently being marketed for Hubbell's enormous profit. Under Item (c), you have requested documentation pertaining to the "3%" figure. I believe we have already provided that, but I am asking Mr. Atchison to further

confirm every document that may directly or indirectly bear on that claim of the profit-sharing promise.

Subsequent to the initial disclosures, Mr. Atchison's continued investigation permits the following supplementation. The comments below include reference to some of the witnesses that we have previously identified, based upon Mr. Atchison's subsequent location of, and conversation with, the relevant witnesses. Shortly, I expect to provide to you the declarations of Andrew Korton; Jeremy Gaupel; Mike Roof; and Fred Schaab:

(a) **Andrew Korton** (989 Jonquil Lane, Cincinnati, OH 45231; 513-432-9896; akorton@gmail.com). It is believed that Mr. Korton will testify that he was among the hirees who actually constructed, under Mr. Atchison's direct supervision, the newly-developed Brake Power Modules conceived by Mr. Atchison, on the premises of the Kentucky facility. It is believed that Mr. Korton will affirm that (almost without exception) the only significant production in that building was Brake Power Modules. In the course of working "on the line" at the Kentucky facility, Mr. Korton will emphatically dispute the inaccurate statements by Mr. Crowe and Mr. Hinton regarding the work done at that site. Mr. Korton is aware that they were working under the "informal" heading of "Power Electronics," although he does not know any of the technical or business aspects of that name. Emphatically, Mr. Korton says that almost 100% of the work done on that line was for Brake Power Modules, and that any slight "resistor" work was purely incidental and inconsequential. It is believed that Mr. Korton will testify that, from the beginning of his seven years of employment on that Brake Power Module line, it was generally discussed and known among Mr. Atchison and the co-workers, that the diagrams and parts lists being used were technical materials that had been generated by Mr. Atchison long before he went to work for Powerohm, on his own time, almost as a hobby. Mr. Korton recalls discussions with the other BPM assemblers, and their general awareness of Mr. Atchison's being entitled to 3% of the Brake Power Module gross sales. That comment rarely (but definitely) came into the team's general conversations about the quality and production rate for the Brake Power Modules. Also during that timeframe, he became aware (due only to his discussions with Mr. Atchison) that the "TA" parts references stood for "Timothy Atchison." Those parts lists predated any work by Mr. Atchison for Powerohm.

(b) **Mike Roof** (609 North Stargate Drive, Antioch, Tennessee 37013; 757-513-0931; mroof12211@hotmail.com) was a co-employee with Mr. Atchison and Mr. Olson at Bonitron. Mr. Roof has very little information about the later events that are alleged in the Complaint. Material to the important issues in the case, it is believed that Mr. Roof will testify as follows, directly contradicting what he strongly characterizes as "false" statements in the recent depositions of Mr. Crowe and Mr. Hinton:

(1)     While at Bonitron, it was generally understood among the employees and senior staff that Bonitron was content with its present line of (relatively rudimentary) Brake Power Modules, with emphasis focusing on maintenance and product application, rather than new design and product innovations. Mr. Roof is aware that, while employed by Bonitron, Mr. Atchison openly discussed with various employees (including Mr. Roof and Mr. Olson) his work at home that focused, despite Bonitron's lack of interest, on developing innovative Brake Power Modules that had increased power capacity and better reliability. Mr. Atchison's daily work at Bonitron involved future design concepts.

(2)     Mr. Roof has no recollection or knowledge of any discussions involving Mr. Atchison's assignment of the "TA" parts numbers in that early timeframe.

(3)     While at Bonitron, Mr. Roof will affirm that Mr. Crowe and Mr. Hinton initially approached the three individuals named (Atchison, Olson and Roof) with the proposal to start a new business that would be named "Power Electronics" based entirely (100%) on Timothy Atchison's "kitchen table" Brake Power Module and other innovations. It was Crowe and Hinton who suggested that, for his design contributions, Mr. Atchison would receive 3% of the annual gross receipts generated from the "Power Electronics" Brake Power Modules, under the terms of a business plan initially prepared by Crowe and Hinton, and later "tweaked" by Atchison, Roof and Olson. Mr. Roof is firm in his recollection that Mr. Atchison was promised 3% from the new business operation, and that the specific figure was contained in the business plan prepared by Crowe and Hinton.

(4)     The "group" plan did not come together, for no particular reason that Roof can recall. He remained with Bonitron. But, he is aware that Hinton and Crowe continued to seek Mr. Atchison's Brake Power Module designs, and that those designs (of which he was well aware through his discussions with Atchison prior to Powerohm) that Atchison possessed those BPM innovation diagrams and notes long before he went to work for Powerohm, and that was absolutely the primary reason for Powerohm's invitation to Timothy Atchison. Following Atchison's departure from Bonitron, it was understood that "Power Electronics," whatever final

form it might take, was to be the "Brake Power Module" division for Powerohm, to be headed by Timothy Atchison, and for which he was to be paid 3% annually from gross sales. Following Atchison's departure, Mr. Roof basically lost contact with all parties and possesses no information form that date forward.

(c) **Fred Schaab** (615-812-2984) is a former Boniton sales person, knowledgeable about Omron (generator modules and brake modules usage). It is believed that Mr. Schaab can affirm the general awareness of Bonitron's high Brake Power Module failure rates, and Mr. Atchison's vocal frustrations about the failure rates. Mr. Schaab will state that Bonitron had little interest in Mr. Atchison's personal (openly discussed) new BPM designs, and that Mr. Atchison's Bonitron role was focused on existing product application, maintenance, and testing of Bonitron's BPM product line. Mr. Schaab will describe the uniqueness of Mr. Atchison's "paperwork" on the subject, which was generated independent of any work at Bonitron or Powerohm.

(d) **Jeremy Gaupel** (859-757-6410). Prior to the Hubbell acquisition, Mr. Gaupel was a "Brake Module assembler" at the Kentucky facility, and was the first person trained by Mr. Atchison to test the Generator Modules and Brake Power Modules. It is believed that Mr. Gaupel can confirm that the only consistently-produced work in the "Atchison" building on Powerohm's Kentucky premises, was the Generator Modules, with accompanying loose circuit boards, and all Brake Power Modules created and brought to market by Mr. Atchison. Mr. Gaupel left the employment of Powerohm before the Hubbell acquisition. It is believed that the relevant information known by Mr. Gaupel may be summarized as follows: (1) It was generally known within the Brake Power Module assembly department (about 10 employees) that the originating ideas and designs for the devices being assembled by the team were the personal product of Mr. Atchison. There was "occasional discussion," in that context, when technical problems or questions arose, that Mr. Atchison's personal early drawings were a source of reference by Mr. Atchison, with Mr. Atchison affirming that the materials being referenced in that context, were matters that he had developed on his own, long before he had gone to work for Powerohm; and (2) "Occasionally," Mr. Gaupel heard Mr. Atchison comment to him, and to the other assemblers, that Mr. Atchison received a small "percentage" from the sales of the devices they were assembling.

(e) **Elva Martinez** (713-248-6590) was an engineer at Omron, eventually purchased by Slumberjay. It is believed that Ms. Martinez will affirm that she was knowledgeable about the Bonitron high failure rate with their (early form) Brake Power Modules, particularly in the evolution of Bonitron's Brake Modules in their oil rig applications. She can affirm the industry-

wide unresolved technical problems in producing increased, higher power ratings, to reduce the number of slave modules, while maintaining, or enhancing, increased reliability to avoid failure breakdowns. It is believed that Ms. Martinez can affirm the general awareness that the new Brake Power Module schematics and parts lists were the "homework" of Tim Atchison, and not otherwise.

(f)     **Jon Wehman** (615-775-8993) is what Mr. Atchison describes as a "super tech," not involved in design, but very capable in testing, troubleshooting and repairing the motherboards and Brake Modules. Tim Olson replaced Mr. Wehman at an early stage of the relationship. But, it is believed by Mr. Atchison that Mr. Wehman can corroborate the definite uniqueness of Mr. Atchison's schematics and parts lists, in developing the Brake Power Module designs presently marketed by Hubbell.

(g)     **Dorel Ciornei (**281-744-9450) is a former design engineer who now resides in Houston. He is an acquaintance of Elva Martinez and David Huntington, as well as Mr. Atchison. Like most of the other identified witnesses, it is believed that he would know very little about any aspect of the <u>business origin</u> of Power Electronics, in the timeframe that preceded Mr. Atchison's commencement of employment with Powerohm, and immediately thereafter, until purchased by Hubbell. However, like most of the others identified, it is believed that Mr. Ciornei can corroborate the **technical origin** of the Brake Power Modules eventually developed at the Kentucky facility by Mr. Atchison's specialized group, and that it was generally known that those unique schematics and parts lists were the personal work product of Mr. Atchison, and not otherwise.

(h)     **David Huntington** (713-826-0198) is an oil rig systems expert. It is not thought that Mr. Huntington has a great deal of directly relevant information to the case issues, and that he is only incidentally involved (as previously disclosed) as having triggered Mr. Atchison's research that led to the discovery (although buried relatively obscurely) of Hubbell's appropriation of Mr. Atchison's intellectual work product, including the Stuart Xiang documents/diagrams, and the "TA" parts list prefixes now used by Hubbell, that are documented in the unmodified computer drives of Mr. Atchison, that definitively date Mr. Atchison's assignment of those parts lists to as early as 2007, long before he went to work for Powerohm.

Finally, I reiterate (as emphasized in the attached, proposed discovery statement) that Hubbell's refusal to provide any substantive facts or documents supported by proper verification has placed me at a great disadvantage in attempting to represent Mr. Atchison's interests in this difficult case. **I respectfully oppose the completion of any further depositions** until this issue is resolved. Should Hubbell proceed unilaterally, I will object to the use of those depositions, for any purpose, until the Court has ruled on what I contend to be Hubbell's default in providing good

faith discovery responses at this stage, despite months of available time within which the information could have been easily assembled.

Should the depositions go forward, I cannot accept Hubbell's attempt to block my participation by video, upon your stated premise that, if Hubbell must incur the expense, Mr. Atchison should also incur the expense of in-person participation of his counsel. It is a false equivalent. Hubbell is a successful corporation. My client is impoverished, and is the sole caretaker of his elderly, ill mother. The comparison is unreasonable, and I will present it to the Court if Hubbell cannot reach a fair position.

Respectfully,

**BURGER LAW FIRM**

*/s/Ken Burger*
Wm Kennerly (Ken) Burger
Attorney at Law

cc:

Howell O'Rear
howell@mcolawfirm.com

Seth M. McInteer
seth@mcolawfirm.com

William E. Bradley
wbradley@rc.com

Tim Atchison