# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

TIMOTHY ALLEN ATCHISON,

      Plaintiff,

    v.

HUBBELL INDUSTRIAL CONTROLS, INC.,

      Defendants.

Case No. 3:24-CV-922

Judge Trauger

## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Hubbell Industrial Controls, Inc. ("Hubbell") respectfully requests that the Court deny Plaintiff's Motion to Compel (Doc. 53)("Plaintiff's Motion").

## I.  INTRODUCTION

Plaintiff's Motion is the latest in a series of procedural violations by Plaintiff that have wasted judicial resources and imposed unnecessary costs on Hubbell.  Plaintiff's Motion should be denied solely on the grounds that Plaintiff failed to follow the local rules and the Case Management Order. Plaintiff was required to discuss the specific issues and relief sought prior to requesting a telephone conference with the Court and then only filing a motion to compel if warranted after. Plaintiff failed to follow these procedures in substance and form. In the phone conference held between the parties, Plaintiff only specifically raised an issue with the verification page, and then generally objected to Hubbell's interrogatory objections and responses. Plaintiff did not raise any other specific discovery issue.

After the exchange of the Joint Discovery Statement, it was still unclear what relief was being sought by Plaintiff. The improper filing of the Motion to Compel and the entirely new

1

arguments presented therein versus the Joint Discovery Statement only increased the level of confusion. Plaintiff's failure to follow procedure and failure to articulate a clear basis for relief after multiple attempts is grounds for dismissal alone.

The Motion should also be denied on the grounds that Hubbell has committed no violation of its discovery duties, that the relief sought has no basis in the Federal Rules, and that the requests made by Plaintiff are unduly burdensome and disproportionate to the needs of the case. Plaintiff argues that Hubbell has "failed to answer almost every relevant interrogatory" and that Hubbell has "frivolously object[ed] to every question." (Doc. 53 at 3). Any inspection of Plaintiff's Interrogatories and Hubbell's responses, however, shows that it is the questions that are frivolous, that Hubbell's objections are appropriate, and that Hubbell provided all relevant information it was aware of at that point. Hubbell conducted a thorough investigation of personnel and documents available to find any responsive information. Plaintiff is fully aware that he delayed bringing this case for nearly ten years, that most of the personnel from the original time period no longer work for Hubbell, and that the documents available to Hubbell from this time period are limited.

Further, prior to Plaintiff's Motion, three depositions have been conducted of independent 3rd party witnesses who corroborate the answers provided in Hubbell's interrogatories and support Hubbell's objections. Discovery conducted by both parties has now proven what Hubbell asserted in the beginning, that Plaintiff's claims are entirely unfounded and that this litigation is a vexatious attempt to extract money from Hubbell. *See* Doc. 21 at 6. This Motion is a further attempt by Plaintiff to increase the burden on Hubbell, baselessly claiming that Hubbell is failing to provide answers on things that never existed and that, even if they did exist, Hubbell could not possibly have knowledge of.

Plaintiff's claims of prejudice are also unfounded. Hubbell hand-served Plaintiff with the subpoenas for the independent, third-party depositions of Mr. Crowe and Mr. Hinton after the May 5, 2025 case management conference. Hubbell specifically asked at that time for Plaintiff to let them know if those dates did not work. More than a month passed, and Plaintiff did not object. On June 9th, less than ten days before the first deposition was to take place, Plaintiff first objected to the timing of the 3rd party depositions. Plaintiff is the one that brought this case and there is nothing in Hubbell's possession or control that Plaintiff needed to question those independent witnesses.

Hubbell's 26(a)(1) Initial Disclosures were also hand served on May 5, 2025 (followed by electronic copies). Ex. A (Hubbell Initial Disclosures). Any potential witnesses, sources of information, and relevant documents were therefore presented to Plaintiff before discovery even started. Plaintiff cannot claim prejudice, as any information he needs to prosecute this case has been made fully available to him from the beginning. Plaintiff, however, has not noticed any depositions to pursue his claims, forcing Hubbell to bear the expense of vindicating itself in this litigation.

Due to Plaintiff's improper actions and the lack of any basis for the relief sought in the Motion to Compel, Hubbell also asks that the Court impose appropriate sanctions and an award of fees for this issue as Plaintiff's behavior in seeking relief is not substantially justified. Further, Hubbell asks that Plaintiff's Motion to Compel be decided on the papers, or alternatively via a phone conference, as nothing needs to be presented in person to decide this matter.

## II.     RELEVANT FACTS & PROCEDURE HISTORY

1. Plaintiff was employed by Powerohm as a product design engineer beginning in 2008. (Doc. 1 at 3). Plaintiff was hired by Powerohm to build a brake power module device (Ex. B,

Crowe Dep. at 96:12-16; Ex. C, Hinton Dep. at 35:15-23; Ex. D, Yingling Dep. at 18:7-11)) which went on sale around 2010-2011.

2. In January of 2014, Hubbell purchased Powerohm, acquiring all of Powerohm's products (Ex. B, Crowe Dep. at 35:10-36:3), including the brake power module line, which was, and still is, a minor part of Powerohm's business (*id*. at 38:6-41:8).

3. After the acquisition, Plaintiff worked for Hubbell, continuing his work on the brake power module products. Ex. D, Yingling Dep. at 57:23-61:23, 29:12-23. These products, which were on sale by Powerohm prior to the acquisition, were continuously sold by Hubbell from the acquisition to the present day. *Id.* at 34:7-35:21.

4. Plaintiff worked for Hubbell until July of 2015 when he was fired for a pattern of poor conduct and failing to show up for mandatory meetings with management. *Id.* at 34:7-35:21.

5. After a period of nearly ten years, Plaintiff brought this suit against Hubbell. Doc. 1.

6. Plaintiff originally sued on the theories of:

> (1) joint venture: profit/proceeds accounting;
> (2) quantum meruit/unjust enrichment;
> (3) fraud and intentional misrepresentation/concealment of claim;
> (4) constructure trust/confidential relationship/fiduciary breach; and
> (5) patent violation.

(Doc. 1 at 1-2).

7. Plaintiff's claims are based on the allegations that, when he joined Powerohm, he was promised by Powerohm that they were setting up a joint venture named "Power Electronics" to develop and sell the Plaintiff's power brake modules (Doc. 1 at 3-6); that he was promised 3% of the global sales (*id*. at 7); that Plaintiff was deceived by Hubbell's "implied abandonment of the **"Power Electronics"** joint venture" (*id*. at 16, emphasis original).

8.     A motion to dismiss was filed by Hubbell on November 13, 2024. (Docs. 20, 21). After briefing, the Court granted Hubbell's motion, dismissed all of Plaintiff's causes of action except unjust enrichment claim. (Docs. 38, 39).

## ARGUMENT

### III.   DENIAL AND SANCTIONS ARE WARRANTED BASED ON PLAINTIFF'S FAILURE TO FOLLOW THE LOCAL RULES AND CASE MANAGEMENT ORDER

The purpose of the Federal Rules is to "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ P. 1. The purpose of the local rules is to similarly streamline procedures, reduce uncertainty, and minimize judicial workload. Plaintiff's failure to follow the federal and local rules, and his misleading statements to the Court in his two improper motions, is a clear attempt to achieve the opposite effect. Plaintiff has made no good faith effort to resolve these issues before involving the Court, and has even short-circuited the Court's own procedures to narrow the discovery issues before formal briefing. Plaintiff should not be rewarded for refusing to follow proper procedures and being allowed to derail this case to unnecessarily increase the burden on Hubbell and the Court.

#### A. Plaintiff Failed to Follow Proper Procedure when Filing the Motion to Compel and the Motion to Waive Telephone Discovery Conference

The genesis of this current dispute lies in Plaintiff's non-responsive interrogatory answers, which Hubbell first addressed by requesting a meet and confer. Plaintiff, in retaliation, raised blanket objections to Hubbell's discovery responses. During the conference, Hubbell specifically identified which responses required amendment and sought reasonable accommodations. Hubbell has expressed, and maintains, a willingness to resolve these issues without Court intervention. By contrast, Plaintiff was unprepared in the telephone conference to discuss any specific issues beyond the verification page, asserting only general objections without offering concrete solutions.

5

Immediately following the call, Plaintiff pushed for a joint statement and subsequent court involvement rather than continued dialogue.

After the exchange of the joint statement, it remained unclear what specific relief was being sought, but Plaintiff proceeded to press these issues with the Court and file the Joint Statement which was submitted on August 1, 2025. (Doc. 52).

Hubbell's confusion was only increased when Plaintiff immediately filed the Motion to Compel. (Doc. 53). Judge Trauger's requirements, and the Case Management Order (Doc. 46), are unequivocal: parties <u>must</u> submit a joint statement and conduct a telephone conference with the Court to address discovery disputes before filing a motion to compel. As a courtesy, Hubbell's local counsel informed Plaintiff of the Judge's requirements as asked that he withdraw the motion. While Plaintiff responded that he was going to ask the judge to waive it or defer until after the call, Plaintiff violated LR 7.01 by not asking if Defendants would oppose (it was not even clear that a separate motion was being filed) and by not giving counsel time to respond before immediately filing the Motion to Waive the Telephone Conference. (Doc. 54).

Plaintiff's actions are also in violation of the Case Management Order. A procedure for a discovery dispute was previously agreed to by the Parties and adopted by the Court. (Doc. 46 at 3). The parties agreed that "no motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger." *Id*. Plaintiff has violated this agreement and the Court's order by its actions and misrepresentations. In similar instances, courts have taken such actions in consideration when denying a motion to compel. *See McFadden v. Swift,* No. 1:23-CV-00058-TAV-CHS, 2024 WL 3740302, at *2 (E.D. Tenn. June 26, 2024) (denying motion to compel and noting that plaintiff violated the scheduling order when he "did

not appear and participate in the videoconference hearing because he wrote that it would be 'futile.'").

These actions have wasted the time of the parties and the Court, and are representative of Plaintiff's continuous disregard for the federal rules. The complaint was initially filed without numbered paragraphs, resulting in an "idiosyncratic format" that the Court has already noted "strains Rule 10's requirements." (Doc. 38 at 1). This formatting failure unnecessarily increased the burden on both Hubbell and the Court in reviewing the Motion to Dismiss, preparing the Answer, and throughout subsequent proceedings. Plaintiff subsequently filed a Motion for Complaint Amendment (Doc. 24) that failed to comply with Local Rule 7.01(a)(1), and a unilateral 26(f) statement in the incorrect format without proper consultation with Hubbell (Doc. 42). Plaintiff has even filed discovery requests, which had to be stricken by the Court. *See* ecf notice of May, 16, 2025 ("NOTICE TO FILER re DE# [48]: Discovery is not filed pursuant to Fed.R.Civ.P. 5(d)(1). This document is deleted from the docket. (kc)").

Plaintiff's current posturing has escalated the already vexatious nature by which he is litigating this case by misrepresenting to the Court that Plaintiff's discovery issues have been "exhaustively discussed" and that urgent relief was needed to prepare for the April trial date. (Doc. 54). As shown below, these arguments are baseless.

**B. Plaintiff's Discovery Issues Presented in the Motion Were Not Previously Raised**

A review of the Joint Discovery Statement (Doc. 52) and the Motion to Compel (Doc. 53) shows that Plaintiff's basis for objecting to Hubbell's discovery responses has totally changed from what was initially presented to Hubbell. The issues set forth in Plaintiff's Motion, therefore, were not previously raised, and no good faith effort to resolve these issues can be shown by Plaintiff. As noted above, Plaintiff did not discuss specific issues with Hubbell's discovery apart

from the verification page, and instead only raised general objections. The Joint Discovery Statement also does not show any objections to specific interrogatories. (Doc. 52). The record shows that Plaintiff's issues with Hubbell's discovery are unjustified, which is evident by the changing basis for Plaintiff's relief. Evidently Plaintiff realized that the issues he raised in the Joint Discovery Statement had no legal footing, and so he completely changed his position in the Motion to Compel. The issues raised in the Motion to Compel are related to 1) Hubbell's verification page not explaining the documents and witnesses relied upon in more detail; 2) Hubbell not providing a privilege log in connection with its privilege/work product immunity claims; and 3) Hubbell's document production. As explained below, these issues were not discussed in the telephone conference or raised in the Joint Discovery Statement and are being raised for the first time by Plaintiff in this Motion.

1. <u>Plaintiff Changed Course from His Hearsay Objections to the Verification</u>

Plaintiff's initial objections to the verification page (raised in the telephone conference) focused on the lack of indication that the documents reviewed were not hearsay and the requirement that Hubbell's affiant, Mr. Paul, have knowledge of all the documents. This is shown in the Joint Discovery Statement, where Plaintiff argued that Hubbell's interrogatory verification page did not certify that all of the documents reviewed meet the business records exception to the hearsay rule under Federal Rule of Evidence 803(6). *See* Doc. 52 at 3-6. Plaintiff specifically argued that "[i]f the Hubbell representative has reviewed records, he must: (i) at least generally identify what he has reviewed; (ii) state that he knows, as corporate representative, that those records upon which he has provided his statement of facts, were 'maintained in the ordinary course of business' by Hubbell; and (iii) that, based on his representative capacity, his routine duties

8

involve knowledge of the credibility of those 'routinely-maintained' business records." *Id.* at 5-6. Plaintiff then went on to lay out the requirements of Rule 803(6) in detail. *Id.*

In the Motion to Compel, Plaintiff has entirely abandoned this objection. Instead, Plaintiff seems to assert that the verification page itself must contain a more detailed description of the material reviewed and the persons interviewed to obtain information. This was not asked for in the telephone conference. However, it was explained to Plaintiff that Hubbell has reviewed all available relevant documents and spoken with personnel who may have knowledge of the events. Those documents were produced over a month ago and those individuals are listed in Hubbell's 26(a)(1) disclosures. If Plaintiff wanted a specific reference to these materials in the verification, he could have asked for it and the request would have easily been granted. Instead, Plaintiff asked Hubbell to certify that all documents reviewed in formulating the responses meet the business records exception to the hearsay rule under Federal Rule of Evidence 803(6) and that Hubbell provide an affiant whose position gave them direct knowledge and control of the storing of such documents. Hubbell objected on the reasonable grounds that this would be unduly burdensome and that such a position did not exist.

Hubbell believes the verification page is valid and meets the requirements of the Federal Rules. S*ee infra* § IV(D)). Plaintiff's Interrogatory verification contains no description of documents reviewed or an identification of people Mr. Atchison discussed these claims with in answering Hubbell's interrogatories, and it is unclear why Hubbell should be held to a different standard.

While the issues being raised regarding the verification page have clearly changed, Hubbell remains confused as to what language would appease Plaintiff and what relief is being sought. Oddly, Plaintiff has not even asked in the relief requested that the language of the verification page

be changed. *See* Doc. 53 at 13-14. If the Plaintiff cannot even properly articulate what should be changed in the written submission to the Court, clearly no good-faith effort has been made to address this issue with Hubbell prior to Plaintiff's Motion.

2. Plaintiff Only Now Asserts that a Privilege Log is Needed

Plaintiff only made a general objection to Hubbell's privilege objections in the telephone conference and only generally took issue with Hubbell objecting to his interrogatories in the Joint Discovery Statement. Doc. 52 at 6. The Motion to Compel now asserts that Hubbell should have provided a privilege log for any information that is being withheld. This was not previously requested.

In response to the general objections during the telephone conference, Hubbell explained to Plaintiff that it was only asserting privilege and work product immunity over post-complaint activities and communications. Plaintiff did not suggest that Hubbell needed to modify its responses to include or refer to a privilege log. Given that the requests seek information not subject to a privilege log, and that privilege logs of post complaint activity are only required in exceptional circumstances (*see infra* § IV(B)), Hubbell did not expect this recent request. If it *had* been raised early, Hubbell would have it explained the legal basis for its objection to such a request, and this issue could have been avoided here.

3. Plaintiff did Not Raise an Issue with Hubbell's Document Production in the Telephone Conference

Plaintiff complains in the Joint Discovery Statement of a "classic document dump" by Hubbell, but did not raise this issue in the initial call. As discussed in further detail below (*infra* § IV(E)), Plaintiff requested over ten years' worth of marketing materials, technical information, and engineering data for an entire family of products. Due to the technical nature and file types of many of the documents, the documents were provided in native format organized in the folder

10

structure in which they are stored by Hubbell. *This is the same format and organization provided by Plaintiff in response to Hubbell's requests.* Plaintiff did not raise this issue or ask for any further clarification of the document production in the call. Plaintiff's current request that the document production be "indexed" not only goes against the requirements of the Federal Rules, but also makes no sense given the fact that the documents are already indexed in the native folder structure in which they are stored (which also provides a general description of what the documents are). Hubbell would have been willing to provide reasonable further clarification if asked, but the issue was not raised by Plaintiff.

In view of the above, Plaintiff's failure to follow proper procedure and the shifting nature of Plaintiff's demands and objections, shows that these issues have not even been raised with Hubbell, let alone "exhaustively discussed" as alleged by the Plaintiff. Plaintiff's Motion should be denied on these grounds alone, and sanctions with an award for attorney's fees in favor of Hubbell are warranted.

## IV. THE COURT SHOULD DENY PLAINTIFF'S MOTION AS A MATTER OF LAW

Plaintiff's objections to Hubbell's discovery responses are also not based in law. Hubbell has followed standard discovery procedures, by providing standard interrogatory objections and presenting any available evidence in its responses. Hubbell has made no improper privilege claims and should not be required to submit a privilege log for post-complaint actions or communications. Hubbell's verification page and document production were also proper.[1]

---

[1] Plaintiff appears to have dropped his request for blanket permission for remote deposition participation. If Plaintiff raises this issue, Hubbell incorporates its comments in the Joint Discovery Statement (Doc. 52 at 13) and reserves the right to request supplemental briefing on the issue.

## A. Hubbell's Interrogatory Objections and Responses are Appropriate

As noted, any specific objections to Hubbell's Interrogatory Responses are being raised for the first time and Plaintiff continues to raise improper general objections to Hubbell's responses. Given Plaintiff's unilateral insistence on proceeding with the Motion to Compel instead of the standard discovery phone conference, Hubbell is compelled to address the improper general objections.

Any reasonable review of Plaintiff's interrogatories and Hubbell's responses shows Hubbell made a good faith effort to answer Plaintiff's questions. It is well-established that a party cannot be compelled to produce information that is not within their possession, custody, or control. It is clear that Plaintiff requests information that the defendant does not possess and cannot reasonably obtain.

For example, Interrogatory No. 2 requests Hubbell to provide reasons that "Powerohm, established the separate business entity labeled 'Power Electronics,' in affiliation with an (otherwise-described) 'routine employee,' Timothy Allen Atchison." Doc. 53-2 at 6-7. Interrogatory No. 4 asks if Hubbell denies a property in Kentucky was purchased by Powerohm for the Plaintiff, and No. 5 asks that if No. 4 is denied, to explain why the building was acquired and refurbished. *Id*. at 8-9. Hubbell properly objected on the grounds that this seeks information related to Powerohm prior to Hubbell's acquisition of the company in 2014, and further responded that "[u]pon information and belief, there was no business entity 'Power Electronics' established by Powerohm at any time, either with or without Plaintiff's involvement." *Id*. Relating to the "Kentucky House" Hubbell, at the time of preparing the responses, only knew that it acquired a lease for the house as part of the sale of Powerohm, but that the shareholders of Powerohm retained title to the property. Nothing about these objections and answers are improper or evasive. Hubbell

cannot be expected to know about actions taken at Powerohm before it bought the company and Hubbell made every effort to investigate and provide a good faith response to these questions.

Furthermore, depositions of three independent, 3rd party witnesses have recently been completed that confirm that Plaintiff's allegations are false and that these interrogatory questions are improperly based on events that never occurred.[2] There was never any separate "Power Electronics" business entity or division (Ex. A at 52:12-18; Ex. B, Hinton Dep. at 33:10-16), Plaintiff was never promised 3% of sales of the brake power module products (Ex. A at 65:5-22; Ex. B 134:19-135:3), and the "Kentucky House" was purchased by Powerohm for parking before Plaintiff was even hired by the company (Ex. A at 77:6-78:8). These facts show that Hubbell's objections to the interrogatories are reasonable and that its responses, while brief, are factually correct.

### B. Hubbell's Privilege Objections are Proper and No Privilege Log for Post Complaint Activities and Communications is Warranted

Regarding Interrogatories 7-9, Plaintiff now accuses Hubbell of providing "no slight hint of any factual basis" for its responses. Doc. 53 at 5. Plaintiff also implies that Hubbell should have provided a privilege log for any claim of privilege in response to these interrogatories. The premise that Hubbell has provided no answers and refuses to explain the factual basis for its responses is entirely false as discussed in further detail below and with respect to the appropriateness of the verification page (*infra* § IV(C)).

As noted above, this issue was not raised earlier. In response to Plaintiff's general objection, it was explained to Plaintiff that Hubbell's privilege objections were related to attorney-client communications and work product developed after the case was filed. If Plaintiff had

---

[2] The last of the deposition transcripts was received by Hubbell on August 12, 2025 and these transcripts are being reviewed so that the interrogatory responses can be updated pursuant to FRCP 26(e)(1).

mentioned the privilege log in the telephone conference or even the Joint Discovery Statement, Hubbell could have provided the explanation it is forced to submit to the Court below and this issue could have been avoided. Plaintiff's unilateral insistence on proceeding with the Motion to Compel instead of the standard discovery dispute practice has again required Hubbell and the Court to expend unnecessary resources.

### 1. Hubbell Provided Factual Underpinning for the Responses

Plaintiff falsely alleges that Hubbell has provided no information on the sources of Hubbell's knowledge for these responses. *See* Doc. 53 at 5-6. But in response to Interrogatory 1, Hubbell explained that Mr. Paul "has knowledge or has been informed based on the company's investigation and has the competency to testify about the information learned or the authenticity of the documents produced with the information that is known or reasonably available to the organization pursuant to Fed. R. Civ. P. 30(b)(6) in response to Plaintiff's discovery requests and may incorporate information provided by one or more employees or experts consulted in preparing the responses." This is the exact general description of the search conducted and documents reviewed that Plaintiff repeatedly alleges is absent from Hubbell's responses. Plaintiff has not articulated—coherently or otherwise—what more could be explained. Hubbell has conducted a good faith search, produced documents, and identified witnesses in accordance with the Federal Rules of Civil Procedure.

Furthermore, Hubbell does not merely assert privilege and fail to otherwise respond to Plaintiff's Interrogatory Nos. 7-9. Instead, Hubbell points directly to its 26(a)(1) disclosures to explain that this information was already provided to Plaintiff. Doc. 53-2 at 11-12; *see also* Ex. A. These requests ask Hubbell to identify what evidence it will present in defense, who supplied information, and what witnesses were consulted. These people, along with supporting documents,

are clearly identified in Hubbell's 26(a)(1) disclosures. *Id*. In fact, Hubbell's 26(a)(1) disclosures are fully responsive to Interrogatory No. 8. These responses and the 26(a)(1) disclosure will be updated as appropriate, and any additional information relating to Hubbell's investigation after the complaint was filed is protected under attorney client privilege or work product immunity.

## 2. Plaintiff's Request Seeks Non-Tangible Privileged Information

Plaintiff seems to allege that a claim of privilege without providing a privilege log is inappropriate, but Plaintiff's Interrogatories seek not just tangible information subject to a privilege log, but also the mental impressions and legal strategy of Hubbell and its counsel.

For example, Interrogatory No. 7 asks: "Set forth in detail below a description of all of Hubbell's investigative efforts performed by Hubbell since the filing of Plaintiff's Complaint…" Doc. 53-2 at 11. Interrogatory No. 9 asks Hubbell to prepare "a context summary of every witness interviewed." *Id*. at 12. These requests do not involve tangible items that can be put in a privilege log, but the mental impressions of Hubbell's counsel and actions taken to defend this litigation. As noted, the basic information of the witnesses interviewed and the documents consulted are presented in Hubbell's 26(a)(1) disclosures (noted in response to Interrogatory Nos. 7-9). Any more detailed information is privileged.

Under the Federal Rules of Civil Procedure, a party's obligation to produce a privilege log is limited to documents or tangible things being withheld from production. A party is not required to log abstract legal theories, litigation strategy, or mental impressions unless those are embodied in a tangible form that is otherwise discoverable. Rule 26(b)(5)(A) only requires logging of withheld "documents, communications, or tangible things." This language presumes the existence of a document or tangible item being withheld from production. Here, Plaintiff seeks no such tangible items; rather, he seeks protected mental impressions and litigation strategy.  It does not

create a requirement to describe mental impressions or litigation strategy not memorialized in a tangible format as requested by Plaintiff. Therefore, where no document or communication exists, and the information sought is purely mental (e.g., an attorney's intended litigation approach), there is no loggable item within the meaning of the rules.

Work product doctrine, codified in Rule 26(b)(3), specifically protects "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." To answer Plaintiff's Interrogatories as requested would essentially require Hubbell to create documents detailing its litigation investigation strategy and summaries of verbal communications between witnesses and counsel and then withhold and log that document for privilege. This would create undue work for Hubbell that is not proportional to the needs of the case. Further, Plaintiff has made no showing of what information would be contained in this material and why he needs it for his case. The witnesses interviewed and the documents search are already disclosed in Hubbell's 26(a)(1) statement. Plaintiff needs nothing more for his case and is simply trying to increase the burden and expense of litigation on Hubbell.

### 3. A Post Complaint Privilege Log is Not Warranted

To the extent that any documents, communications, or other tangible things are sought by Plaintiff, they relate to only post-complaint activities and communications and should not be required to be logged. Preparing such a privilege log would not be in accordance with normal federal practice, would not show any relevant discoverable information, and would be unduly burdensome and not proportional to the needs of the case. Plaintiff, however, has made no showing that such an extraordinary irregular task is necessary.

Courts typically find that materials generated after the filing of a lawsuit, particularly those reflecting communication between counsel and client and directed to work product immunity, are

presumed privileged and not subject to privilege log disclosure unless the opposing party makes a showing of need or relevance.

In *Grider v. Keystone Health Plant Central, Inc.*, 580 F.3d 119, 139 (3d Cir. 2009), the Third Circuit stated that "a rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship" and concluded that "a privilege log may not be required for communications with counsel after the filing of a law suit." *Id*. at 139 n.22; s*ee also U.S. v. Bouchard Transp.*, 2010 WL 1529248, at 2 (E.D.N.Y. 2010) (noting that "privilege logs are commonly limited to documents created before the date litigation was initiated"); *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at 3 (N.D. Cal. 2009) (stating that "counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log"); *Pennsylvania State University v. Keystone Alternatives LLC*, 2021 WL 1737751, *3 (M.D. Pa. May 3, 2021) (recognizing that "[t]here is no requirement that a privilege log be created for privileged documents generated after the filing of the complaint"); *In re Snap Inc. Sec. Litig.*, 2018 WL 7501294, at *1 (C.D. Cal. Nov. 29, 2018)("Courts in this circuit routinely deny a motion to compel a privilege log of attorney-client communications or work product dated after commencement of litigation.").

Communications between counsel and client after a complaint is filed are presumed privileged, as they typically pertain to litigation strategy. Likewise, materials prepared for or during litigation, such as mental impressions and legal strategies, are protected work product and generally do not require separate privilege log entries, since their context makes their protection apparent.

17

Plaintiff has given no explanation of what benefit he will gain from such a detailed privilege log. Preparing such a privilege log would require Hubbell to reconstruct every phone call and meeting held about this litigation and to catalog a significant quantity of emails for no ultimate benefit to Plaintiff. This ongoing requirement would obligate parties to log and supplement post-complaint materials throughout litigation, potentially exposing litigation strategies, increasing costs and burdens, chilling attorney-client communications, and undermining essential privileges. Such a requirement is clearly not proportional to the needs of the case and should be denied.

### C. Hubbell had No Prior Knowledge on Plaintiff's Firing

Hubbell again has a simple answer regarding its objections and response to Interrogatory No. 3 related to Plaintiff's firing. If Plaintiff had raised this specific issue in the telephone conference or Joint Discovery Statement, it could have been explained. Instead of acting in good faith to seek clarity on this issue, Plaintiff improperly necessitated the Court's involvement.

At the time of responding to the interrogatories, Hubbell did not know about Plaintiff's firing because they are unable to locate his employee file after a diligent search. It is believed to have been deleted after seven years in accordance with routine document retention policies as is standard with all employees. [3] No one involved with Plaintiff's firing remains at Hubbell, and those with any potential knowledge were interviewed and had no knowledge of why he was fired.[4]

Hubbell has recently learned that Plaintiff was fired for cause. Ex. D at 34:7-35:21. Hubbell will be updating its responses pursuant to FRCP 26(e)(1).

### D. Hubbell's Verification is Proper

---

[3] This would have provided a buffer on the standard statute of limitations timeframe for cases such as this.

[4] Those individuals are listed in Hubbell's 26(a)(1) disclosures as appropriate.

While it appears that Plaintiff has now pivoted from his FRE 803(6) argument, it remains unclear what Hubbell can do to satisfy Plaintiff's request to alter the verification page. It is also unclear what prejudice can be corrected by changing the language of the verification page, as it would not alter the contents of Hubbell's responses.

Notably, Plaintiff's Interrogatory Response verification page states:

> I, Timothy Allen Atchison, after being first duly sworn do hereby depose and state that I have read the foregoing interrogatory responses, and I affirm that the statements are true and complete."

This statement clearly does not set forth the "factual basis" or "general descriptive facts" on which Mr. Atchison's responses are based. Nor does it clarify what he reviewed, who he did and did not speak with, or what he could or could not find. Yet Plaintiff seeks to impose this ambiguous and amorphous duty on Hubbell. This duty, however, is not contemplated by the Federal Rules.

Rule 33 requires only that an officer or agent of the party must furnish the available information and the "person who makes the answers must sign them, and the attorney who objects must sign any objections." The case law cited in Plaintiff's Motion clearly supports these requirements and does not indicate that any further requirements should be imposed.

Hubbell's interrogatory responses are verified and signed by Hubbell's legal counsel and Steve Paul, the general manager of Hubbell Power Quality Solutions acting as Hubbell's agent. The verification states that:

> "The responses set forth therein, subject to inadvertent or undiscovered error, as based upon and therefore necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these responses. The response set for therein are based on information and documents provided to me. Consequently, I reserve the right to make changes to these responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available. Subject to the limitations set forth herein, the responses are true to the best of my knowledge, information, and belief."

19

This verification is proper and meets the requirements of showing evidentiary competency as requested by the Plaintiff.

Further, in response to Interrogatory 1, Hubbell explained that:

> The individual executing the Verification Page has knowledge or has been informed based on the company's investigation and has the competency to testify about the information learned or the authenticity of the documents produced with the information that is known or reasonably available to the organization pursuant to Fed. R. Civ. P. 30(b)(6) in response to Plaintiff's discovery requests and may incorporate information provided by one or more employees or experts consulted in preparing the responses.

This explanation, along with Hubbell's 26(a)(1) disclosures in Plaintiff's possession since May 5, 2025, provide more than adequate information on the basis for Hubbell's responses. Nothing more should be required and Plaintiff's request for relief on this issue should be denied.

### E. Hubbell's Document Production is Organized in the Same Manner as Plaintiff's Production and Proportional to Plaintiff's Request

Plaintiff's allegations of Hubbell's production being "random pages" and an "overwhelming and meaningless 'document dump'" are especially improper. Due to the technical nature and file types of many of the documents, the documents were provided in native format organized in the folder structure in which they are stored by Hubbell. Rule 34(b)(2)(E) expressly permits producing documents "as they are kept in the usual course of business," which is exactly what Hubbell has done here. And this is the same format and organization provided by Plaintiff in response to Hubbell's request. Note the "organized" format of Plaintiff's document production:

20



Versus the "random" and "overwhelming" format of Hubbell's production:



Hubbell has merely complied with Plaintiff's Interrogatories and Request for Production as required. For example, Plaintiff's Interrogatory 14 alone requests, for each brake power module from June 1, 2015 to the present date, a description of all of Hubbell's brake power modules, all manuals and technical specifications, an itemized list of customers, a list of gross sales, and "each

21

and every advertisement and communication" regarding improvements or innovations. Doc. 53-2 at 16-17. Plaintiff's Document Request also asked for technical information and engineering data since 2014.

Accordingly, Plaintiff requested over ten years' worth of marketing materials, technical information, and engineering data for an entire family of products. It is believed that about 10k documents were produced, which is entirely reasonable given the product range and the scope of time identified by Plaintiff. It is unclear what "itemization" is being requested by Plaintiff, as this was not discussed in the telephone conference. Hubbell is under no obligation to further organize or describe each document to the Plaintiff and the relief sought by the Plaintiff should be denied.

## V.    CONCLUSION

In light of the foregoing, Hubbell respectfully submits that Plaintiff's Motion to Compel should be denied and requests an award of sanctions and attorneys' fees pursuant to Rule 37(a)(5)(B). Plaintiff has violated clear obligations under the Court's rules and the Case Management Order, resulting in unnecessary litigation costs and delays. The imposition of sanctions and an award of attorneys' fees is warranted to remedy the burden and expense improperly placed on Hubbell and to deter similar conduct in the future. No correction by the Court or request by Hubbell has had any effect on Plaintiff who continues in a vexatious nature to violate the rules and attempt to increase the costs and burden on Hubbell. These actions will clearly continue until sanctions are awarded.

Hubbell also asks that Plaintiff's Motion to Compel be decided on the papers, or alternatively, via a phone conference if necessary. Plaintiff has not submitted any evidence or argument that would require an in-person presentation to the Court, and is simply seeking to increase the burden and expense of Hubbell to litigate this matter.

22

Further, Hubbell asks that its request for a phone conference on its discovery issues with Plaintiff be stayed. Plaintiff has not provided any of the updated interrogatory responses requested and has failed to respond to document requests that were due July 20, 2025. Hubbell remains committed to attempting to resolve these issues in good faith according to the Court's normal procedures and the Case Management Order.

Respectfully submitted,

*/s/ Howell O'Rear*
Howell O'Rear (BPR #26509)
Seth M. McInteer (BPR #26471)
McInteer & O'Rear PLC
2209 Crestmoor Rd., Ste. 310
Nashville, TN 37215
howell@mcolawfirm.com
seth@mcolawfirm.com
Ph. 615-724-6207
Fax 615-523-1311

William E. Bradley (*pro hac vice*)
Kyle G. Hepner (*pro hac vice*)
Robinson & Cole LLP
1201 Pennsylvania Avenue, NW, Ste. 820
Washington, DC 20004
wbradley@rc.com
khepner@rc.com
Ph. 771-213-5602
*Counsel for Hubbell Industrial Controls, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was electronically filed with the Court using the CM/ECF system to the following on August 14, 2025:

Wm. Kennerly Burger (BPR #3731)
Burger Law Firm
12 North Public Square
Murfreesboro, TN 37130
T: 615-893-8933
F: 615-893-5333
kenburger@comcast.net

/s/ Howell O'Rear